No. 25-20354

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

Peng Wang; Qinlin Li,

*Plaintiffs - Appellants*

v.

Ken Paxton, in his Official Capacity as Attorney General of Texas,

*Defendant - Appellee*

**On Appeal from**
United States District Court for the Southern District of Texas

4:25-CV-3103

**BRIEF OF APPELLANTS QINLIN LI AND PENG WANG**

SUBMITTED BY:

Justin Sadowsky
CHINESE AMERICAN LEGAL
DEFENSE ALLIANCE
4250 N. Fairfax Drive
Arlington, VA 22203

Keliang (Clay) Zhu
CHINESE AMERICAN LEGAL
DEFENSE ALLIANCE
7901 Stoneridge Drive #208
Pleasanton, CA 94588

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th CIR Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Appellees: | Counsel for Appellees: |
| --- | --- |
| Ken Paxton | William Peterson of Office of the Attorney General Austin, TX |
| Ken Paxton | Benjamin Mendelson of Office of the Texas Attorney General Austin, TX |
| Ken Paxton | Brian Ingram of Office of the Attorney General Austin, TX |

| Appellants: | Counsel for Appellants: |
| --- | --- |
| Qinlin Li | Justin Sadowsky of Chinese American Legal Defense Alliance Arlington, VA |
| Peng Wang | Justin Sadowsky of Chinese American Legal Defense Alliance Arlington, VA |

S/Justin Sadowsky
Attorney of record for Appellants

## STATEMENT REGARDING ORAL ARGUMENT

Appellants request oral argument, which is currently tentatively scheduled for Tuesday, November 4. Appellants respectfully state that oral argument is warranted due to the importance and novelty of the issues presented.

# TABLE OF CONTENTS

Contents                                             Page(s)

CERTIFICATE OF INTERESTED PERSONS ........................................ii

STATEMENT REGARDING ORAL ARGUMENT ............................... iii

TABLE OF CONTENTS ...................................................................iv

TABLE OF AUTHORITIES....................................................................vi

INTRODUCTION..................................................................................... 1

JURISDICTIONAL STATEMENT ......................................................... 4

STATEMENT OF ISSUES...................................................................... 5

STATEMENT OF THE CASE ................................................................. 6

   A.   The legislature passes SB 17. ................................................... 6

   B.   Appellants will be harmed by SB 17............................................ 8

   C.   Appellants bring this challenge to SB 17. ................................10

SUMMARY OF ARGUMENT ...............................................................12

ARGUMENT ......................................................................................... 14

   I.   Standard Of Review. ................................................................. 14

   II.   Appellants are covered by SB 17. ...........................................16

  A. Appellants intend to rent housing for a year or longer. .................16

  B. Appellants' rentals are at least "arguably" proscribed by SB 17...17

     1.   Nonimmigrant aliens cannot establish a local domicile under Texas law....................................................................................17

     2.   The interpretation of the Attorney General does not alter the meaning of SB 17. ....................................................................20

     3.   Appellants' interpretation of domicile is, at minimum, arguable.....................................................................................22

     4.   Alternatively, the Court should certify the interpretation of domicile to the Texas Supreme Court........................................24

C. There is a meaningful risk of enforcement despite the Attorney General's assurances. ...................................................... 25

II. SB 17 is preempted under federal law. .................................. 28

   A. CFIUS and FIRRMA regulate purchases of land by foreign nationals. ....................................................................... 28

   B. SB 17 conflicts with CFIUS/FIRRMA. ........................... 30

   C. The field of nonimmigrant alien land ownership is entirely regulated by Congress. .......................................................... 31

   D. SB 17 is also preempted by the Fair Housing Act. ........ 34

III. SB 17 violates the Equal Protection Clause. ........................... 37

   A. SB 17 discriminates based on national origin and race. 37

   B. Texas cannot satisfy strict scrutiny. ........................... 38

   C. Texas cannot satisfy rational basis scrutiny. .............. 41

IV. Provisional certification is warranted in this case. ................. 42

V. All remaining factors support an injunction pending appeal. 44

CONCLUSION ........................................................................... 46

CERTIFICATE OF COMPLIANCE ........................................... 48

# TABLE OF AUTHORITIES

**Cases.............................................................................Pages(s)**

*Angell v. GEICO Advantage,* 67 F.4th 727 (5th Cir. 2023) ................... 43

*Arizona Dream Act Coal. v. Brewer,* 855 F.3d 957 (9th Cir. 2017) ........ 41

*Arlington Heights v. Metro. Hous. Dev. Corp.,* 429 U.S. 252 (1977) ...... 37

*Arnold v. Williams,* 979 F.3d 262 (5th Cir. 2020)................................. 16

*Astralis Condo. Ass'n v. HUD,* 620 F.3d 62 (1st Cir. 2010)................... 35

*Baker v. Carr,* 369 U.S. 186, 204 (1962) .............................................. 23

*Bangerter v. Orem City Corp.,* 46 F.3d 1491  (10th Cir. 1995)............. 34

*Bernal v. Fainter,* 467 U.S. 216 (1984. ) .............................................. 37

*Book People, Inc. v. Wong,* 91 F.4th 318 (5th Cir. 2024) ...................... 45

*Byrum v. Landreth,* 566 F.3d 442  (5th Cir. 2009) ............................... 15

*Cabell v. Chavez-Salido,* 454 U.S. 432 (1982). ..................................... 40

*Castro v. Collecto,* 634 F.3d 779  (5th Cir. 2011). ................................ 28

*City of Cleburne, Tex. v. Cleburne Living Ctr.,* 473 U.S. 432 (1985)...... 37

*Crosby v. Nat'l Foreign Trade Council,* 530 U.S. 363 (2000)............ 30, 31

*Dallas v. Abbott,* 304 S.W.3d 380, 384 (Tex. 2010)............................... 21

*De Canas v. Bica,* 424 U.S. 351 (1976)) .............................................. 31

*Elkins v. Moreno,* 435 U.S. 647 (1978). .............................................. 18

*Funygin v. Yukos Oil Co.,* 2005 WL 1840147  (S.D. Tex. July 28, 2005).
........................................................................................................ 17

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal,* 546 U.S. 418
(2006) ............................................................................................... 39

*Graham v. Richardson,* 403 U.S. 365 (1971) ................................... 31, 40

*Holmes v. Morales,* 924 S.W.2d 920 (Tex. 1996)................................... 21

*Holt v. Hobbs,* 574 U.S. 352 (2015) ...................................................... 39

*Interpipe Contracting, Inc. v. Becerra,* 898 F.3d 879 (9th Cir. 2018)..... 38

*Janvey v. DSCC,* 712 F.3d 185, 200 (5th Cir. 2013) .............................. 28

*Jones Eagle v. Ward,* 2024 WL 5112477 (E.D. Ark. Dec. 9, 2024) ......... 30

*Lake Charles Diesel, Inc. v. Gen. Motors Corp.,* 328 F.3d 192  (5th Cir.
  2003). .............................................................................................. 15

*LeClerc v. Webb,* 419 F.3d 405, 416 (5th Cir. 2005)............................... 19

*Ministries v. Sec'y of State for State of Ala.*, 992 F.3d 1299 (11th Cir. 2021) ............................................................................................................ 38

*Petrobras Am., Inc. v. Samsung Heavy Indus. Co., Ltd.*, 9 F.4th 247 (5th Cir. 2021) ........................................................................................ 15

*Picard v. Magliano*, 42 F.4th 89 (2d Cir. 2022) ..................................... 24

*Portee v. Morath*, 683 F. Supp. 3d 628 (W.D. Tex. 2023)...................... 45

*Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296 (D.C. Cir. 2014) ............................................................................................. 29

*Rest. L. Ctr. v. U.S. Dep't of Lab.*, 66 F.4th 593 (5th Cir. 2023)............. 44

*Shaw v. Delta Air Lines*, 463 U.S. 85 (1983) ........................................ 28

*Shen v. Simpson ("Shen I")*, 687 F.Supp.3d 1219 (N.D. Fla 2023)... 33, 36

*Shen v. Simpson ("Shen II")*, Case No.23-12737, Dkt.59 (11th Cir Feb 1, 2024) ....................................................................................... 33, 40

*Simms v. First Gibraltar Bank*, 83 F.3d 1546 (5th Cir. 1996) .............. 35

*Snyder v. Pitts*, 150 Tex. 407 (1951) ..................................................... 18

*Speech First. v. Fenves*, 979 F.3d 319 (5th Cir. 2020). ..................... 16, 25

*Stefanoff v. Hays Cnty.,* 154 F.3d 523 (5th Cir. 1998); ......................... 41

*Steffel v. Thompson*, 415 U.S. 452 (1974) ............................................. 23

*Stenberg v. Carhart,* 530 U.S. 914 (2000), .......................................... 21

*Stirman v. Exxon Corp.*, 280 F.3d 554 (5th Cir. 2002) ........................ 43

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014).......... 22, 23, 26

*Swart*, 581 S.W.3d 844 (Tex. App. 2019) .............................................. 18

*Takahashi v. Fish and Game*, 334 U.S. 410 (1948)......................... 31, 40

*Terrace v. Thompson*, 263 U.S. 197 (1923) ........................................... 33

*Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Cmties. Project*, 576 U.S. 519 (2015) .............................................................................. 35

*Texas v. Yellen*, 105 F.4th 755 (5th Cir. 2024)...................................... 22

*Tioronda, LLC. v. New York,* 386 F. Supp. 2d 342 (S.D.N.Y. 2005) ...... 45

*Toll v. Moreno,* 458 U.S. 1 (1982)......................................................... 31

*Turtle Island Foods, S.P.C. v. Strain*, 65 F.4th 211 (5th Cir. 2023) 21, 24

*Villas at Parkside v. Farmers Branch*, 726 F.3d 524 (5th Cir. 2013)31, 40

*Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383 (1988)....................... 21

*Women's Med. Ctr. of Nw. Houston v. Bell,* 248 F.3d 411 (5th Cir.2001). ............................................................................................................ 15

*Younger v. Harris*, 401 U.S. 37, 91 (1971) ........................................... 27

## Statutes

8 C.F.R. § 214.2(f)(f)(i). ....................................................................... 9

22 C.F.R. § 1.61(b)(1)(iv) ................................................................... 17

28 U.S.C 1292(a) ................................................................................ 4

28 U.S.C 1294(1). ............................................................................... 4

28 U.S.C. § 1331 ................................................................................ 4

28 U.S.C. §§ 1291 ............................................................................... 4

42 U.S.C. § 3604(a)(f). ...................................................................... 34

Tex. Admin. Code § 21.24(d)(3). ...................................................... 19

Tex. Prop. Code § 5.251(3)(A) ........................................................... 7

Tex. Prop. Code 5.252(1) ................................................................... 6

Tex. Prop. Code § 5.253 ..................................................................... 7

Tex. Prop. Code § 5.253(1)-(3) .......................................................... 6

Tex. Prop. Code § 5.253(4)(A)-(B) ................................................... 17

Tex. Prop. Code § 5.253(4) ................................................................ 6

Tex. Prop. Code 5.254(a)(2) ............................................................... 7

Tex. Prop. Code §§ 5.255(b)-(c)) ...................................................... 27

Tex. Prop. Code § 5.256(2) .............................................................. 34

Tex. Prop. Code § 5.258(a) ................................................................ 8

Tex. Tax Code § 11.13(j) .................................................................... 7

## Other Authorities

https://journals.senate.texas.gov/sjrnl/89r/pdf/89RSJ06-02-F.PDF ....... 11

https://www.dni.gov/files/ODNI/documents/assessments/ATA-2025-
   Unclassified-Report.pdf ................................................................. 10

Legal Opinion 97-5, DOJ INS General Counsel's Office, 1997 WL
   33169235 (Apr. 8, 1997) at *2 (citing 8 U.S.C. § 1184(b)) .................. 22

Tex. Atty Gen. Op. JM-241, 1984 WL 182307 (1984) ............................ 18

Tex. Atty. Gen. Op. JM-309, 1985 WL 189741 (1985) ........................... 18

# INTRODUCTION

SB 17 imposes discriminatory prohibitions on ownership, purchase, and lease of real property based on national origin, race, and ethnicity, including most prominently people from China. Appellants and the class they seek to represent are prohibited from purchasing or leasing homes, second homes, or investment properties. For some people, this will harm their financial interests or way of life. For others, it threatens their very ability to remain in Texas, or indeed, the United States.

The District Court nevertheless dismissed Appellants' claims because, based on the Attorney General's protestations, Appellants are supposedly not covered by the law. Other than three limited categories (agents of a foreign state, members of a foreign state's ruling political party, and citizens of a foreign state here unlawfully), SB 17's prohibitions apply to individuals of a foreign state who are not domiciled (defined as that term normally is under Texas law) in the United States. And according to the District Court and the Attorney General, if they are renting a property to live in, that shows they want to live in the United States, and absent some specific desire to return to China, that makes them domiciled in the United States.

1

But while Appellants would love for SB 17's prohibitions to not apply to the vast majority of Chinese people living in Texas, that's not how Texas law operates. Texas law prohibits most individuals here on a nonimmigrant visa from declaring themselves domiciled here, including those on F-1 visas, which both Appellants were on when they brought this suit (and which one of whom will continue to be on for the foreseeable future).

Meanwhile, the District Court's interpretation stands contrary to the structure of SB 17 itself. SB 17 permits those not domiciled in Texas to purchase (not rent) a homestead, that is, a house they intend to live in. But if intending to live in a house was enough to create a domicile, that partial exception to the law would not apply in the first instance. At minimum, Appellants have standing to challenge SB 17 because their actions are "arguably proscribed" by that law.

Nor do the Attorney General's protestations that he will not attempt to enforce the law against these Appellants mean that there is no threat of enforcement. If it did, then almost all pre-enforcement challenges could be dispensed with by such (non-binding) disclaimers. But both this Court and the Supreme Court have rejected such arguments as

barriers to standing in the past. And, in any event, this Attorney General is not running for re-election, if the next Attorney General disagrees, Appellants' renting a home today can easily be targeted in 2027. Likewise, contrary to the District Court's opinion, nothing in the law prohibits a local prosecutor with a different interpretation of SB 17 from charging Appellants with a state jail felony.

But if this Court has any doubt about the meaning of SB 17, there is a solution: certify the meaning of SB 17 to the Texas Supreme Court. Only that Court can proffer a binding interpretation of SB 17 that would give safe harbor to Appellants and the many thousands of other class members Appellants seek to represent. Otherwise, all of these people will live in fear of so much as renting a home in Texas, because doing so could end up being a felony.

## JURISDICTIONAL STATEMENT

The District Court for the Southern District of Texas had jurisdiction over this case under 28 U.S.C. § 1331 because Appellants' claims arose under the Constitution and laws of the United States. Venue was proper in the Southern District of Texas because the case involves a challenge to Texas law and because as a material part of the actions Appellants wish to take in contravention of SB 17 were to take place in Houston On August 18, 2025, the District Court issued an order denying Appellants' motion for a preliminary injunction and dismissing the case. ROA.251-272. The next day, Appellants filed a timely notice of appeal. ROA.273. Jurisdiction in this Court is proper under 28 U.S.C. §§ 1291, 1292(a), and 1294(1).

## STATEMENT OF ISSUES

(1) Did Appellants have standing to bring a pre-enforcement challenge to SB 17, which prohibits Chinese citizens not domiciled in the United States from entering into leases of a year or more, when they were on nonimmigrant F-1 visas that Texas law treats as insufficient to establish domicile?

(2) Is SB 17, which creates new classifications of disfavored aliens and then prohibits those immigrants from entering into a variety of real estate arrangements, preempted by federal immigration law?

(3) Is SB 17, which prohibits non-domiciled and other aliens from entering into a variety of real estate arrangements, if and only if they are citizens of China, Russia, Iran, or North Korea, preempted by the Fair Housing Act?

(4) Does SB 17, which prohibits non-domiciled and other aliens from entering into a variety of real estate arrangements, if and only if they are citizens of China, Russia, Iran, or North Korea, violate the Equal Protection clause of the Fourteenth Amendment?

## STATEMENT OF THE CASE

### A.   The legislature passes SB 17.

SB 17 is purportedly designed to counter the alleged national security threat posed by China, Russia, Iran, and North Korea. SB 17 § 1, ROA.168-169. It prohibits Chinese citizens, agents, and members of the Chinese communist party from purchasing or leasing land in Texas, subject to certain exceptions. Tex. Prop. Code §§ 5.253, 5.253. Exceptions include Chinese Citizens who are also U.S. citizens or permanent residents (who are exempted from SB 17 outright), *id.* § 5.252(1), as well as (other than Chinese agents and members of the Chinese Communist Party) Chinese citizens who are lawfully present in the United States, but not U.S. citizens or permanent residents, and are still domiciled in the United States. *Id.* §§ 5.253(4)(A)-(B). The law and its prohibitions further apply to any company or organization majority-owned or under the control of a covered Chinese person, headquartered in China, "directly or indirectly controlled" by the Chinese government. *Id.* §§ 5.253(1)-(3).

Once the law applies, it forbids a covered person or entity from owning or leasing any form of property in Texas, subject to two exceptions. Tex. Prop. Code § 5.253. First, any covered entity may lease property for under a year. *Id.* § 5.252(3). Second, Chinese citizens who are domiciled in China, legally residing in the United States, and are not Chinese agents or members of the Chinese Communist Party, may purchase a home for use as a "residence homestead" as that term is defined by the Texas tax code. *Id.* § 5.253(4)(A), Tex. Tax Code § 11.13(j).

The law applies in similar fashion to Iran, North Korea, and Russia, Tex. Prop. Code § 5.251(3)(A).[1] Countries can be added to or deleted from the law's restrictions based on either the Annual Threat Assessments of the U.S. Intelligence Committee, *id.* § 5.251(3)(A), or the Governor's whim, *id.* § 5.254(a)(2). The Governor may separately declare entities "a transnational criminal organization" and subject their members, to the law's prohibitions as well. *Id.* § 5.254(a)(2). The Governor may also designate or remove any company or organization from the law's reach. *Id.* § 5.253(2)(d).

---

[1] *See* https://www.dni.gov/files/ODNI/documents/assessments/ATA-2025-Unclassified-Report.pdf.

7

Besides various civil penalties, any intentional or knowing violation of SB 17 is a state jail felony. Tex. Prop. Code § 5.258(a).

The Governor signed SB 17 on June 20.[2] SB 17 took effect September 1, 2025. SB 17 § 8, ROA.173.

## B.    Appellants will be harmed by SB 17.

Mr. Peng Wang, currently on an F-1 visa, is a Chinese citizen that has lived in Texas for over 10 years. ROA.101. A devout Christian, he is currently pursuing a Master of Divinity at a seminary school in the Fort Worth area and plans to be a worship pastor. *Id.* Because an F-1 visa does not grant a right to permanent legal status, he cannot consider himself a domiciliary of Texas; despite having no real plans to return to China, ROA.102, he must consider himself a domiciliary of China, *see* Argument § II, below.

He is currently a renter. ROA.102. His current lease expires this December. *Id.* Renting for less than a year will be too expensive. *Id.* It also causes too much uncertainty if he must move frequently due to constant living in short term rentals. *Id.* And because Mr. Wang is a student

---

[2]    https://journals.senate.texas.gov/sjrnl/89r/pdf/89RSJ06-02-F.PDF    at 3862.

in Fort Worth on a J-1 vias, leaving would mean terminating his studies at that school, *id.*, and potentially being forced to leave the country entirely, 8 C.F.R. § 214.2(f)(f)(i).

Qinlin Li, a Chinese citizen and recent graduate of the University of Texas A&M with a Master of Science degree in environmental engineering, is currently on an F-1 visa, though that visa will change to an H-1B visa in around October. ROA.105. Because neither an F-1 visa nor (arguably) an H-1B visa grants a right to permanent legal status, she cannot consider herself a domiciliary of Texas. Id.; *see also* Argument § II, below. She works as a water/wastewater treatment plant design engineer for a private company. ROA.105-106. Because of Texas's needs, she works over 50 hours a week. *Id.* Ms. Li is currently renting. ROA.106 As a renter, she prefers a one-year lease, as short-term rentals in the area are in-convenient, more expensive, and of poorer quality. *Id.*

Ms. Li would ultimately like to purchase a home because property ownership is the only way to ensure that homes are well maintained. ROA.107. But because her career will require him to spend time in multiple cities, she would like to buy a home in more than one location—which SB 17 prohibits. *Id.*

9

As a result of SB 17, Ms. Li's subjective interest in remaining in Texas permanently is ambivalent. *See* ROA.106 ("I think this law is essentially forcing me to leave Texas."). And, in any event, as a very recent graduate, Ms. Li has no history of employment or other forms of setting concrete roots in Texas, or for that matter, anywhere else in the United States.

## C.    Appellants bring this challenge to SB 17.

Appellants, along with a third plaintiff, Ms. Yisi Wang, filed this lawsuit on July 3, ROA.9, two weeks after SB 17 was signed by the Governor, *see* n.2, above. Appellants brought claims that SB 17 was invalid because it was preempted by federal immigration law and the Fair Housing Act, and that SB 17 violated the Equal Protection Clause. ROA.27-35. Appellants sought to represent the class of all people affected by SB 17, broken down into various subclasses. ROA.24-26. That same day, Appellants filed motions for a preliminary injunction and provisional class certification. ROA.80, ROA.40.

The Texas Attorney General sought dismissal on the basis that Appellants did not have standing and because SB 17 was, in fact, constitutional. ROA.154-165. He opposed a preliminary injunction on the same

10

basis. ROA.176-181. He further opposed class certification, but only on the grounds that Appellants were not covered by SB 17. ROA.201-206.

Afterwards, Ms. Wang, who was on an H-1B but had filed an I-485 form seeking to obtain her green card and permanent residency in the United States, voluntarily dismissed her claim. ROA.109-110; ROA.207-208.

After oral argument, ROA.294-349, the District Court denied Appellants' motion for a preliminary injunction and dismissed the lawsuit. ROA.251-272. According to the District Court, based on the "concessions" of the Attorney General and the plain language of SB 17, ROA.262, ROA.267-270, Appellants were domiciled in the United States and thus not covered by SB 17, ROA.271; *but see* ROA.288 (later stating that its conclusions were "entirely independent" from the Attorney General's concessions). In its analysis about the meaning of SB 17, the District Court rejected the application of the definition of "domiciled" in other contexts under Texas law. ROA.266. The District Court also did not cite to any source of Texas law which might support the District Court's analysis.

As a result of its ruling, the District Court deemed that (a) Appellants were not attempting to engage in conduct arguably proscribed by

SB 17 by seeking to rent property for a year or more, ROA.265-267, and (b) there was no meaningful risk of enforcement by the Texas Attorney General against Appellants. ROA.267-268. The District Court suggested that if the Texas Attorney General were to promulgate regulations to the contrary, at that point, Appellants could refile their case. ROA.268-269. But since that had not yet happened, the District Court dismissed the case and denied the motion for class certification as moot. ROA.271-272.

Appellants appealed. ROA.273. Appellants then brought a motion for an injunction pending appeal, ROA.274-283, Dkt. 9-1, which was denied by the District Court, ROA.274-283, ROA.288, 290, and then again by this panel, Dkt. 44-1. Appellants further brought a motion to certify the question of the meaning of "domicile" under SB 17 to the Texas Supreme Court, Dkt. 31-1, which this panel carried with the case Dkt. 44-1.

## SUMMARY OF ARGUMENT

SB 17, among other things, prohibits Chinese, Iranian, Russian, and North Korean citizens who are not U.S. citizens or green card holders and who are not domiciled in the United States from renting property in Texas for one year or longer.

Appellants in this case are two individuals who are here on F-1 nonimmigrant visas, neither of which has no legal path to permanent residence in the United States. Texas law, in all other aspects, forbids F-1 visasholders from being deemed domiciled here. And while one of the two individuals will be on an H-1B visa by the time of a decision in this case, and Texas law has in some aspects a constitutionally-required pathway to obtaining domicile status for H-1B visas, it is not clear that it would apply in this circumstance. And even if an H-1B visaholder could be deemed domiciled in the United States under Texas law, Appellant neither has made a commitment to making Texas her permanent residency nor the typical doctrinal background (such as a prior history of employment in Texas) for which domicile status normally attaches.

Both Appellants desire to rent homes for a year or longer in Texas. Such rentals are at least arguably proscribed by SB 17. And the Attorney General's protestations to the contrary do not change that fact, as the Attorney General's statements here are not binding on it or any future Attorney General. Likewise, any disclaimers of an attempt to prosecute, under clearly established Fifth Circuit precedent, do not eliminate the threat of enforcement to Appellants. So Appellants have standing to

challenge SB 17; at minimum, this Court should certify the question of the meaning of SB 17 to the Texas Supreme Court.

Once this Court determines that Appellants have standing, it should rule that SB 17 violates the Supremacy Clause and the Constitution.

Under this Court's prior en banc precedent, a state law affecting the rights of aliens such as Appellants is preempted if it creates new classes of disfavored aliens or places restrictions on immigrants not specifically contemplated by Congress. SB 17 does both.

SB 17 also violates both the Equal Protection Clause of the Constitution and is preempted by the Fair Housing Act. SB 17 discriminates on the basis of national origin and race, and encourages others to do so as well, as it makes illegal transactions of nonimmigrant aliens domiciled outside the United States, *if* they are citizens of China, Iran, Russia, or North Korea.

## ARGUMENT

## I.    Standard Of Review.

"To be entitled to a preliminary injunction, the applicant must show (1) a substantial likelihood that he will prevail on the merits, (2) a

substantial threat that he will suffer irreparable injury if the injunction is not granted, (3) his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin, and (4) granting the preliminary injunction will not disserve the public interest. *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 195–96 (5th Cir. 2003).

"Although the ultimate decision whether to grant or deny a preliminary injunction is reviewed only for abuse of discretion, a decision grounded in erroneous legal principles is reviewed de novo." Women's Med. Ctr. of Nw. Houston v. Bell, 248 F.3d 411, 419 (5th Cir. 2001). Mixed questions of law and fact are also reviewed de novo. *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009), Only pure findings of fact are reviewed on an abuse of discretion standard. *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011).

Here, the Attorney General did not contest any of the facts made by Appellants, *see* ROA.175-181, so a de novo review is appropriate.

A grant of a motion to dismiss is likewise reviewed de novo. *Petrobras Am., Inc. v. Samsung Heavy Indus. Co., Ltd*., 9 F.4th 247, 253 (5th Cir. 2021). Dismissal should only be granted if, accepting the facts

pled in the Complaint as true, there is no claim for relief plausible on its face. *Arnold v. Williams,* 979 F.3d 262, 266 (5th Cir. 2020).

## II.     Appellants are covered by SB 17.

To show standing in a pre-enforcement challenge, a party must show he (1) has an "intention to engage in a course of conduct arguably affected with a constitutional interest," (2) his intended future conduct is "arguably ... proscribed by [the policy in question]," and (3) "the threat of future enforcement of the [challenged policies] is substantial." *Speech First. v. Fenves*, 979 F.3d 319, 330 (5th Cir. 2020).

### A. Appellants intend to rent housing for a year or longer.

As the District Court correctly explained (at 15), the parties do not dispute that Appellants intents to rent housing for a year or longer meets the first *Speech First* prong. This is not only correct because of constitutionally-protected rights in property and contracting, but because Appellants' arguments that SB 17 should be strike down all turn on Constitutional rights, whether those rights are based on the Supremacy Clause or the Equal Protection clause. ROA.27-35.

16

**B.    Appellants' rentals are at least "arguably" proscribed by SB 17.**

    **1.    Nonimmigrant aliens cannot establish a local domicile under Texas law.**

The Appellants are both covered by SB 17 because they are not "domiciled" in the United States. Tex. Prop. Code §§ 5.253(4)(A)-(B). Both were here, at the time of the underlying decision, on an F-1 visa. ROA.101, ROA.105. While Ms. Li will be on an H-1B visa by the time of oral argument, ROA.105, Mr. Wang will still be on his F-1 visa.

To be eligible for an F-1 visa, individuals like Mr. Wang must "intend[], and will be able, to depart upon termination of student status." 22 C.F.R. § 1.61(b)(1)(iv). Although no specific comparable language exists in the Code of Federal Regulations for H-1B visas, that is not because H-1B visaholders may intend to remain in the United States permanently. Instead, "an alien who seeks admission with a properly issued H-1B nonimmigrant visa is not presumed to be an intending immigrant." Legal Opinion 97-5, DOJ INS General Counsel's Office, 1997 WL 33169235 (Apr. 8, 1997) at *2 (citing 8 U.S.C. § 1184(b)). An H1-B visa, in contrast with a green card, is temporary. *Funygin v. Yukos Oil Co.*, 2005 WL

1840147, at *1 (S.D. Tex. July 28, 2005). So H-1B visa holders are not even considered residents of the United States for diversity purposes. *Id.*

The definition of domicile in SB 17 is the same as it is under Texas law. *Compare* Tex. Prop. Code § 5.251(4) *with Snyder v. Pitts*, 150 Tex. 407, 413 (1951). Under Texas law, immigrants here on an F-1 visa cannot establish a domicile and therefore residency for tuition purposes. "[A]ll classes of nonimmigrant aliens would be precluded under the Texas statute from establishing Texas residency." Tex. Atty Gen. Op. JM-241, 1984 WL 182307 (1984); *see also* Tex. Atty. Gen. Op. JM-309, 1985 WL 189741 (1985); *In re Swart*, 581 S.W.3d 844, 850 (Tex. App. 2019) (Texas law prohibits domicile based on residency when that residency is "expressly conditioned admission ... on an intent not to abandon a foreign residence or, by implication, on an intent not to seek domicile in the United States") (quoting *Elkins v. Moreno*, 435 U.S. 647, 665 (1978)).

Notwithstanding this interpretation of Texas law, *Toll v. Moreno*, 458 U.S. 1, 17 (1982), held that "the Federal Government" had "permitted" G-4 visa holders "to establish domicile" and therefore prohibits a State from "imposing discriminatory tuition charges and fees solely on account of" their "immigration classification." Opinion JM-241 held that

the logic of *Toll* applies to other visas, such as NATO visas, forcing Texas to provide a pathway to treating them as domiciled in Texas, at least for in-state tuition purposes. 1984 WL 182307. Consistent with that Opinion, Texas law permits H-1B holders to attempt to establish that they are domiciled in Texas for in-state tuition purposes.[3] But because the Fifth Circuit has not applied *Toll* to nonimmigrant visas for other purposes, *LeClerc v. Webb*, 419 F.3d 405, 416 (5th Cir. 2005) (refusing to apply *Toll* to an Equal Protection claim because, according to the Court, it was only a narrow case about preemption), it is unclear at best whether H-1B visas can qualify at all to be domiciled in Texas (or anywhere else in the United States) under Texas law for any other purpose. Furthermore, Opinion JM-309 expressly held that *Toll* does not extend so far as to F-1 visas. 1984 WL 182307; *see also* Tex. Admin. Code § 21.24(d)(3).

Once on an H-1B visa, Li would still, at best, have to establish that, contrary to her temporary nature, she intends to make the United States her permanent home. *Compare with* Tex. Admin. Code § 21.24(f) (listing factors such as history of gainful employment, residency prior to obtaining education, marriage, and ownership of business as relevant factors

---

[3] *E.g.*, *https://registrar.unt.edu/sites/default/files/eligible-visas.pdf*.

for consideration). And nothing in her declaration shows that—instead, it at best shows ambivalence about where she will go now that Texas has passed SB 17. ROA.106-107. Likewise, Ms. Li lacks both a history of employment in Texas or residency here prior to getting her education. ROA.105-106.

Neither the Texas Attorney General nor the District Court purported to rely on any prior state law interpretation of the meaning of domicile. Indeed, the District Court expressly eschewed the validity of interpreting the meaning of domicile from Texas state law in other contexts. ROA.266.

And, under the District Court's interpretation, the homestead exemption in SB 17 makes no sense. That exemption allows individuals to purchase "residence homestead" as defined by Texas' Tax Code. Tex. Prop. Code § 5.253(4)(A). Someone can claim a "residence homestead" only when they "own" the property, so it does not apply to renters. Texas Tax Code, §11.13(j)(A). But if the District Court were right, all purchasers of a residence homestead would be domiciled in the United States, and thus outside of SB 17 anyway. Here, both Appellants are renters.

### 2. The interpretation of the Attorney General does not alter the meaning of SB 17.

Instead of relying on Texas law, the District Court relied on assurances made by the Attorney General at, ROA.267-270, that domicile only applies in a limited fashion to exclude Appellants. *But see* ROA.288 (later stating that his conclusions were "entirely independent" from those assurances). But *Stenberg v. Carhart,* 530 U.S. 914, 940 (2000), "warn[ed] against accepting as 'authoritative' an Attorney General's interpretation of state law when 'the Attorney General does not bind the state courts or local law enforcement authorities.'" *Id.* at 940 (quoting *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 384 (1988). It is the province of state courts, not the Attorney General, to interpret Texas law. *Holmes v. Morales*, 924 S.W.2d 920, 924 (Tex. 1996); *Dallas v. Abbott*, 304 S.W.3d 380, 384 (Tex. 2010). And this Court has confirmed that assurances like the Attorney General's are not binding. *Turtle Island Foods, S.P.C. v. Strain*, 65 F.4th 211, 217 (5th Cir. 2023), for instance, found that a law is arguably proscribed notwithstanding an enforcement agency's disclaimer if a "future Commissioner" could plausibly bring an enforcement action. *Turtle Island,* 65 F.4th at 217; *see also Stenberg,* 530 U.S. at 945 (warning

about the possibility that "future Attorneys General" might change their interpretation, or that local prosecutors might have a different one).

The Attorney General, for his part, argues that *Turtle Island* only applies to First Amendment claims. Dkt. 23 at 9. Not so. Instead, *Turtle Island* merely faithfully applied the Article III standing factors enumerated by *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158-159 (2014). 65 F.4th at 215-216. And while *Susan B. Anthony List* itself was a First Amendment case, these factors have equally applied to other constitutional claims. *See Texas v. Yellen*, 105 F.4th 755, 764 (5th Cir. 2024) (Spending Clause). Indeed, *Susan B. Anthony List*'s enunciation of the standard does not reference the First Amendment at all, but instead talks about "arguably affected with a constitutional interest," and deterrence of "the exercise of [one's] constitutional rights." 573 U.S. at 158-159.

### 3. Appellants' interpretation of domicile is, at minimum, arguable.

Appellants do not even need to show that they are, in fact, covered by SB 17. Rather, they have standing so long as they are "***arguably***" covered. *Turtle Island*, 65 F.4th at 217-18 (emphasis original) (further explaining that "[t]hough the State belabors that § 4744, and the Act's definitions for 'misbrand' and 'misrepresent' require intentional

mislabeling, Tofurky's alternative reading is arguable" and noting that "the test doesn't require" that reading to be the "***best***") (emphasis original).

The "arguably" standard makes sense as the requirements for standing come out of Article III's "case or controversy" requirement. *Susan B. Anthony List*, 573 U.S. at 157-159. And so long as Appellants have sufficient concern about enforcement against them that they have a meaningful stake in the outcome, the reasons for requiring standing under the Supreme Court's Article III jurisprudence are met. *Baker v. Carr,* 369 U.S. 186, 204 (1962) (purpose of standing is to ensure a "personal stake in the outcome" sufficient to "assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult ... questions"). The standard also makes sense because the ambiguity itself combined with the fear of prosecution can chill the exercise of constitutional rights, for which pre-enforcement claims are designed to protect. *Cf. Steffel v. Thompson*, 415 U.S. 452, 462 (1974) ("refusal … to intervene … may place the hapless plaintiff between the Scylla of intentionally flouting state law and the Charybdis of forgoing what he believes to be constitutionally protected

activity in order to avoid becoming enmeshed in a criminal proceeding").
"If a plaintiff's interpretation of a statute is reasonable enough and under
that interpretation, the plaintiff may legitimately fear that it will face
enforcement of the statute, then the plaintiff has standing to challenge
the statute." *Picard v. Magliano*, 42 F.4th 89, 98 (2d Cir. 2022) (cleaned
up), *cited by Turtle Island*, 65 F.4th at 218.

Such is the case here. Appellants and other Chinese, Iranian, North
Korean, or Russian nonimmigrant aliens are unlikely to risk a state jail
felony by renting a home for a year or more. So SB 17 effectively prohibits
them from engaging in conduct in a manner that is preempted by federal
law and in violation of the Equal Protection Clause. They may thus chal-
lenge the statute.

### 4. Alternatively, the Court should certify the inter-pretation of domicile to the Texas Supreme Court.

There is, of course, one entity whose interpretation can overcome
the presumption in *Turtle Island* that Appellants' conduct is "arguably
proscribed" by SB 17. While the assertions here of the Texas Attorney
General cannot provide safe harbor for the Appellants (or anyone else in
the proposed class), a ruling of the Texas Supreme Court can. If the Su-
preme Court agrees with the Attorney General, then the Challengers can

24

be assured they are not covered by SB 17, and this lawsuit is at an end.
But if the Supreme Court agrees with the Appellants, then they would be
definitively regulated by SB 17, and this case should be decided on the
merits. *See generally* Appellants' Motion to Certify to Texas Supreme
Court.

## C.   There is a meaningful risk of enforcement despite the Attorney General's assurances.

When courts "face a pre-enforcement challenge 'to recently enacted
(or, at least, non-moribund) statutes … by the class to which the plaintiff
belongs, [they] will assume a credible threat of prosecution in the absence
of compelling contrary evidence.'" *Turtle Island*, 65 F.4th at 218 (quoting
*Speech First,* 979 F.3d at 335). And concessions from the Attorney Gen-
eral disclaiming an intent to enforce against challengers are not suffi-
cient. *Id.* ("Even the State's disclaimed intent to penalize the nine labels
is not compelling."). "[N]othing binds the [Attorney General] here—he (or
a future holder of his office) could change his mind and decide [Appel-
lants' actions] do violate the statute." *Id.*

This case shows why. If Appellants rent property now, they may be
subject to civil and criminal enforcement up to three years later. *See gen-
erally* SB 17, ROA.168-174 (no statute of limitations or repose for civil

enforcement); Tex. Code Crim. Proc. Ann. § 12.01(9) (three year statute of limitations for state jail felonies). By that time, there would be a new Attorney General, as the current one is not running for re-election. *See Turtle Island*, 65 F.4th at 218. They would lose their pre-enforcement right to challenge entirely.

The District Court, for its part, suggests that Appellants can come back if the Attorney General regulations required by SB 17 (Tex. Prop. Code § 5.255(a)) put them within the zone of enforcement. ROA.269 ("there is certainly time and place enough for Plaintiffs to bring further action if the Attorney General promulgates procedures contrary to his present representations"). But that's of no help either. While transactions entered into before the enactment of SB 17 are not covered by the law, SB § 6, ROA.173 transactions entered into before the enactment of any regulations are. After all, the regulations are not designed to interpret or limit the substantive reach of SB 17. Rather, the Texas legislature ordered the Attorney General to institute "procedures" for investigating and bringing civil enforcement. ROA.173. Even if the Attorney General has to promulgate regulations before bringing a civil enforcement action, Tex. Prop. Code § 5.255(a), which is unclear, the point of a pre-

enforcement cause of action is to prevent Appellants from having to pur-
chase a property and then see if their actions violate the law, *see Susan
B. Anthony* List 573 U.S. at 159-161; *see also* §B(3), above, rather than
simply permitting a race to the courthouse, *see Younger v. Harris*, 401
U.S. 37, 91 (1971) (court must abstain from interfering with ongoing state
proceedings).

The District Court further suggested that the Attorney General's
disclaimer might mean more because "independent county district attor-
neys" could only prosecute under SB 17 if there is a "refer[ral]" from the
Attorney General "to the appropriate local, state, or federal law enforce-
ment agency." ROA.269-270 (quoting Tex. Prop. Code §§ 5.255(b)-(c)). Re-
spectfully, it's unclear why such a referral is required. SB 17 inde-
pendently makes it a state jail felony to "intentionally or knowingly pur-
chases or otherwise acquires an interest in real property in this state in
violation of this subchapter." Tex. Prop. Code § 5.258(2). Nothing in SB
17 expressly conditions prosecutions on such a referral. And, of course,
federal law enforcement agencies would have no need under the Suprem-
acy Clause to await a referral from the Texas Attorney General before
making an appropriate prosecution (whatever that is) under federal law.

## II.   SB 17 is preempted under federal law.

When a state law is preempted by federal law, it violates the Supremacy Clause. *Shaw v. Delta Air Lines*, 463 U.S. 85, 96 n.14 (1983). Congress may preempt a state law either expressly or by implication. *Castro v. Collecto*, 634 F.3d 779, 785 (5th Cir. 2011).

Implied preemption can take two forms. *Id.* Field preemption occurs "where federal law is sufficiently comprehensive to make reasonable the inference that Congress left no room for supplementary state regulation, or the federal interest in the field is so dominant that it precludes enforcement of state laws on the same subject." *Janvey v. DSCC*, 712 F.3d 185, 200 (5th Cir. 2013) (cleaned up). Conflict preemption occurs "(1) where complying with both federal law and state law is impossible; or (2) where the state law 'creates an unacceptable obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (cleaned up).

### A.   CFIUS and FIRRMA regulate purchases of land by foreign nationals.

The federal government has a detailed and carefully calibrated system for monitoring, mitigating, and blocking certain real estate purchases if they threaten national security. *See* 50 U.S.C.

§ 4565(a)(4)(B)(ii), (d)(1); 31 C.F.R. Part 802. That system is built on a long history of federal monitoring of foreign investment for potential national security issues. In 1975, President Ford established the Committee for Foreign Investment in the United States ("CFIUS"), which is charged with reviewing foreign investments that could impact national security interests. E.O. 11858, 40 Fed. Reg. 20263. Congress codified CFIUS in 1988 and granted the President the authority to suspend or prohibit certain foreign acquisitions posing a threat to national security. Pub. L. 100-418, Title V, § 5021, August 23, 1988; *see also* Foreign Investment and National Security Act of 2007, Pub. L. 110-49, 121 Stat. 246 (July 26, 2007) (modifying CFIUS); *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 302-04 (D.C. Cir. 2014) (describing CFIUS).

In 2018, Congress enacted and President Trump signed the Foreign Investment Risk Review Modernization Act of 2018 ("FIRRMA"), Pub. L. 115-232, which expanded the President's (and CFIUS's) authority to suspend or prohibit "certain types of real estate transactions involving the purchase or lease by, or a concession to, a foreign person." 84 Fed. Reg. at 50215. Specifically, CFIUS/FIRRMA applies to "the purchase or lease by, or a concession to, a foreign person of private or public real estate"

29

that is sensitive for national security reasons. *Id.* (citing 50 U.S.C. § 4565(a)(4)(B)(ii)). But real estate transactions in urbanized areas and involving single housing units are exempted from review, limiting the President's power. 50 U.S.C. §§ 4565(a)(4)(C)(i), (d)(4).

## B.    SB 17 conflicts with CFIUS/FIRRMA.

SB 17 "takes a different view" from federal law "as to what sort of foreign investment ought to be prohibited." *Jones Eagle v. Ward*, 2024 WL 5112477, at *17 (E.D. Ark. Dec. 9, 2024) (enjoining similar law in Arkansas). This approach "clearly conflicts with the cautious, transaction-specific approach taken by Congress to foreign investment in FIRRMA." *Id.* It also "conflict[s] with FIRRMA's regime in terms of how they define foreign ownership." *Id.*

By implementing CFIUS and FIRRMA, "Congress manifestly intended to limit economic pressure" against China and other countries "to a specific range." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 381 (2000). Texas' SB 17, in contrast, deems a wide range of real estate transactions by Chinese companies or citizens a national security threat; it does not matter whether the President disagrees. Those purchases are barred, regardless of any foreign policy consequences.

SB 17 also invades the federal government's broad power over foreign affairs. SB 17 is not shy about declaring China as a serious national security threat and imposes its own blunt-force approach in dealing with hostile foreign countries such as China. The real estate restrictions against the Chinese government, its controlled entities, and the individuals domiciled in China amount to a state-level foreign policy. Because this Texas law weakens the President's ability "to speak for the Nation with one voice in dealing" with China and other nations, it differs dramatically from the federal regime in the purchases it regulates and the penalties imposed, and overrides the nuances of the federal law, it is preempted. *Crosby*, 530 U.S. at 381.

## C. The field of nonimmigrant alien land ownership is entirely regulated by Congress.

As explained in *Toll*, itself a case about nonimmigrant aliens, "*Takahashi* [*v. Fish and Game*, 334 U.S. 410 (1948)] and *Graham* [*v. Richardson*, 403 U.S. 365 (1971)] stand for the broad principle that 'state regulation not congressionally sanctioned that discriminates against aliens lawfully admitted to the country is impermissible if it imposes additional burdens not contemplated by Congress.'" 458 U.S. at 12-13 (citing *De Canas v. Bica*, 424 U.S. 351, 358, n.6 (1976)).

31

Consistent with *Toll*, *Villas at Parkside v. Farmers Branch*, 726 F.3d 524 (5th Cir. 2013) (en banc), set forth two requirements that any state immigration restriction must pass. ***First***, a restriction must be based on a classification that exists "in federal law." *Id.* at 532; *see also id.* at 533 ("because federal law does not limit the ability of non-citizens to obtain rental housing, there is no definition [of type of alien covered by the ordinance] that would be applicable to Farmers Branch's inquiry") (footnote omitted). ***Second***, the restriction cannot "exist outside" the federal "statutory structure." *Id.* at 535. If the restriction goes beyond the federal structure, it is preempted. *Id.* (striking down a city ordinance in Texas that essentially required renters to show proof of citizenship or lawful immigration status).

SB 17 satisfies neither requirement. Indeed, SB 17 highlights why both requirements exist.

SB 17 applies to, among other things, Chinese citizens not domiciled in the United States (as well as agents of China and members of the Chinese Communist Party, which are also not classifications under federal immigration law). And although both H-1B and F-1 visas are temporary, nonimmigrant visas, the Attorney General argues that holders are

not necessarily covered by SB 17. So Chinese citizens must guess at whether the Attorney General (or any one of its 254 county attorneys) will or will not consider themselves domiciled in the United States, facing criminal penalties if they guess wrong. They also must subject themselves to skittish landlords who may not rent to them if those landlords guess wrong.

Below, the Attorney General cited only two cases on the merits in opposition to Appellants' immigration preemption argument. ***First***, he cited *Shen v. Simpson ("Shen I")*, 687 F.Supp.3d 1219, 1246–47 (N.D. Fla 2023). ROA.159-160. That case was wrongly decided, and a panel of the Eleventh Circuit granted an injunction pending appeal, *Shen v. Simpson ("Shen II")*, Case No.23-12737, Dkt.59 (11th Cir Feb 1, 2024), ROA.114-115. It also was decided outside this Circuit, and did not purport to apply either the *Villas at Parkside* test or any similar one. ***Second***, he cited to *Terrace v. Thompson*, 263 U.S. 197 (1923) (discussed further in Section III, below). ROA.160. But whatever the continuing validity of *Terrace,* it was (a) not a preemption case, and (b) predated not only CFIUS/FIRRMA but the modern immigration regulation regime.

**D.    SB 17 is also preempted by the Fair Housing Act.**

The Fair Housing Act prohibits housing practices that discriminate based on race, color, religion, sex, familial status, or national origin, 42 U.S.C. § 3604(a)-(f). It further declares that "any law of a State … that purports to require or permit any action that would be a discriminatory housing practice under [the FHA] shall to that extent be invalid." *Id.* § 3615.

SB 17 falls into this express preemption against national origin discrimination. SB 17 restrictions apply only to people from China and other "designated countr[ies]." Tex. Prop. Code § 5.251(3). States rarely dictate housing policy in such overtly discriminatory terms, likely because doing so obviously violates the FHA. The FHA does not allow a state to "facially single out [a protected class] and apply different rules to them," as Texas has done here. *Bangerter v. Orem City Corp.*, 46 F.3d 1491, 1500 (10th Cir. 1995).

Worse, the law encourages discrimination against Chinese people regardless of whether they are directly covered by the law. *See* Tex. Prop. Code § 5.256(2) (allowing investigation of potential violations); Tex. Prop. Code § 5.257(2) (allowing criminal referrals for "any appropriate criminal

offense in connection with the transaction"); *see also* Tex. Penal Code § 7.02 (aiding and abetting liability). And it does so based on information a seller is not ordinarily likely to know or even inquire about: where a seller is domiciled, what their immigration status is, or whether or not they are a foreign agent or a member of the Chinese Communist Party. The obvious and natural result will be to encourage sellers not to sell to anyone who might possibly come under the law—such as those who look Chinese, or have a Chinese last name, or speak Chinese or with a Chinese accent. *But see Astralis Condo. Ass'n v. HUD,* 620 F.3d 62, 69 (1st Cir. 2010) ("Astralis is duty bound not to enforce a statutory provision if doing so would either cause or perpetrate unlawful discrimination") (finding preemption). And laws and policies that have a discriminatory effect violate the Fair Housing Act even absent discriminatory intent. *Simms v. First Gibraltar Bank*, 83 F.3d 1546, 1555 (5th Cir. 1996); *see also Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Cmties. Project*, 576 U.S. 519, 540 (2015.

Further, housing practices that discriminate on the basis of race are also not permissible under the FHA. 42 U.S.C. 3604. And since the law encourages discrimination against Asians even if they are not

themselves from China, as explained above, SB 17 is independently preempted for that reason as well.

Below, the Attorney General argued that SB 17 does not constitute national origin discrimination but instead discrimination based on what it calls "alienage or citizenship." ROA.161 (quoting *Shen I*, 687 F. Supp. 3d at 1243; *but see* § C, above (SB 17 creates new kinds of immigration statuses not promulgated by the federal government). But that's not true. A person from China, who is not a United States citizen and who is domiciled outside the United States (even if domiciled in, say, Sweden, *see* Tex. Prop. Code § §§ 5.253(4)(B)), who is not a United States citizen and who wants to rent a home for a year or more, cannot under SB 17. But a person from Sweden, who is also not a United States citizen and is also domiciled outside the United States (again in, say, Sweden), may. That is national origin discrimination.

*Shen I* came to a different conclusion because the law in Florida "does not treat aliens differently based on their country of foreign citizenship. 687 F. Supp. 3d at 1238, 1243-44. Instead, the law covered a person domiciled in China covered by the law, regardless of citizenship, and did not cover a person domiciled in Sweden, again regardless of Sweden.

Regardless of how convincing that distinction is, SB 17 works differently. Chinese citizens are covered by the law wherever they are domiciled, so long as they are domiciled outside the United States. Tex. Prop. Code § 5.253(4)(B).

## III. SB 17 violates the Equal Protection Clause.

Of course, even absent the FHA, state laws that discriminate based on race or national origin violate the Equal Protection Clause. *Bernal v. Fainter*, 467 U.S. 216, 219-22 & n.5 (1984).

### A. SB 17 discriminates based on national origin and race.

Discrimination based on national origin is unlawful absent meeting strict scrutiny. *See, e.g., City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439-40 (1985). The law expressly discriminates on those who are from China (as well as other designated countries), regardless of where they are domiciled, so long as they are not U.S. citizens or lawful permanent residents. *See* § II(D), above.

SB 17 also discriminates based on race because racial discriminatory intent was a "motivating factor" behind the law, and it will have a discriminatory impact on Chinese people. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265-66 (1977). The *Arlington*

*Heights* inquiry examines the historical background of the government action, contemporary statements of legislators, the impact of the challenged law, foreseeability of disparate impact, knowledge of impact, and availability of less discriminatory alternatives. *See Greater Birmingham Ministries v. Sec'y of State for State of Ala.*, 992 F.3d 1299, 1322-23 (11th Cir. 2021).

A review of these factors, and especially the law's incredible over-inclusiveness, establish an intent to discriminate against Chinese people (in particular), not just the government of China. *See, e.g., Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 899 (9th Cir. 2018) (overinclusiveness "indicia of discriminatory motive") (citation omitted).

### B.    Texas cannot satisfy strict scrutiny.

Because SB 17 is expressly discriminatory, strict scrutiny applies, and the state bears the burden of establishing that its conduct is narrowly tailored to a compelling government interest. Here, the Attorney General cannot meet this burden.

Although national security often qualifies as a "compelling interest" of the federal government, it is doubtful that a state can simply invoke national security when defending against a constitutional challenge—

38

particularly where, as here, Texas's blunt action is at odds with the federal government's nuanced approach to issues implicating foreign affairs, foreign investment, and national security. *See* §§ II(A)-(C), above. Indeed, to the extent that Texas is attempting to survive strict scrutiny by claiming that its purposes are different than the federal government's interests of national security and international diplomacy under CFIUS and FIRRMA, it has even further positioned itself out of any way to meet the strict scrutiny test.

Regardless, SB 17 fails to satisfy this prong of the test because it does not "actually further[]" national security or any other compelling interest. *See Holt v. Hobbs*, 574 U.S. 352, 364 (2015); *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 438 (2006). There is no evidence that Chinese buyers of property in Texas, for instance, are agents of the Chinese Communist Party or have caused harm to national security. Nor has Texas identified any nexus between real estate ownership by Chinese citizens generally and the various harms they allege China is partaking in in SB 17.

Below, the Attorney General relied on *Terrace*, 263 U.S. 197. ROA.163. But *Terrace* has been discarded by modern Equal Protection law. *Graham v. Richardson*, 402 U.S. 365, 373-74 (1971).

*Terrace* is based on what the Supreme Court would later describe as the "special public-interest doctrine." *Id.*; *see id.* at 373 n.8 (citing to *Terrace* specifically). As *Takahashi v. Fish and Game*, stated, this conflicts with the Fourteenth Amendment, which "embody a general policy that all persons lawfully in the country shall abide 'in any state' on an of legal privileges with all citizens under nondiscriminatory laws." 334 U.S. 410, 420 (1948) (quoted by *Graham*, 402 U.S. at 374). Only "when the restriction primarily serves a political function," such as eligibility to vote or hold office, does the special public-interest doctrine remain valid. *Cabell v. Chavez-Salido*, 454 U.S. 432, 439 (1982).

For this reason, in a concurring opinion, Judge Abudu found Florida's similar law violated the Equal Protection Clause. *Shen II*, ROA.117-121. (The other two judges on the panel did not reach the Equal Protection Clause issue, ROA.114-115). As Judge Abudu explained, rejecting the Equal Protection Cause claim based on the supposed continued validity of *Terrace* was in error. ROA.119-120.

**C.    Texas cannot satisfy rational basis scrutiny.**

Even if rational basis scrutiny applies, the Attorney General still loses. Rational basis scrutiny is not a rubber stamp. There must still be a "legitimate government objective," and there must be a rational basis for the classification of disfavored individuals singled out by a law in light of that purpose. *Stefanoff v. Hays Cnty.,* 154 F.3d 523, 525 (5th Cir. 1998); *Newman Marchive v. Hightower*, 349 F. App'x 963, 965 (5th Cir. 2009) (unpublished). The problem for SB 17 is, because the national security concerns about immigrants from China cannot be a legitimate state government interest, and because Texas can have no legitimate interest in subclassifying immigrants by nationality, domiciliary, political belief or party membership, or any other form of classification different from federal law, *Villas at Parkside*, 726 F.3d at 532; *see also Arizona Dream Act Coal. v. Brewer,* 855 F.3d 957, 975 (9th Cir. 2017). Texas is left with no legitimate government interest upon which to base its law's discrimination against Chinese aliens under the law.

## IV.   Provisional certification is warranted in this case.

The only argument that the Attorney General provided below in arguing against class certification is that Appellants cannot represent the class because they are not covered by the law. ROA.203-204.

The Attorney General cannot otherwise complain about the scope of the class because the scope has been defined based on how SB 17 itself treats individuals. Any claim that the class definitions are impossibly vague is simply an admission that SB 17 is impossibly (and unconstitutionally) vague.

The District Court, for its part, suggested—as part of a standing argument rather than a class certification argument—that Appellants' challenge was too broad because they sought to invalidate the whole law, rather than only part of the law, but they themselves are not covered by the law for every reason. ROA.271.

But although the District Court framed this as a question of standing, it is instead a question of typicality. Otherwise, because standing would be limited to the narrow facts of the named plaintiffs, any certified class could be no broader than the narrow factual claims of the named plaintiffs. But that is not the law.

"[T]he claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Typicality focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *Angell v. GEICO Advantage,* 67 F.4th 727, 736 (5th Cir. 2023) (internal quotation marks omitted) (*quoting Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002). The "critical inquiry is whether the [named petitioners'] claims have the same essential characteristics of those of the putative class." *Id*. (brackets original) (quoting *Stirman*, 280 F.3d at 562). "If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *Id*. (quoting *Stirman*, 280 F.3d at 562).

And here, most (if not all) of Appellants' claims turn on the same legal theory. If Appellants are correct that SB 17 prohibits Texas from creating new classes of nonimmigrant aliens who may be subject to property restrictions not authorized by Congress, it would not matter whether the nonimmigrant in question is a Chinese F-1 visaholder seeking to rent property, a Chinese communist party member seeking to purchase a home, or an Iranian H-1B visaholder seeking to purchase investment

43

property. Wang and Li have the "essential characteristics" of the class—they are covered by SB 17 and subject to its general restrictions. Indeed, that must be the case because the Appellants have defined the class based on the language and meaning of SB 17 itself.

In any event, if the Court deems that only one of Wang or Li has standing, Appellants respectfully request the Court require certification of a class with that Appellant as the sole class representative. And if the Court deems that Wang or Li do not have, for instance, the requisite interest to represent, for instance, individuals who seek to purchase a home, or Chinese communist members or government agents, Appellants respectfully request this Court order a more cabined class to be certified. Indeed, Appellants suggested subclasses precisely for this reason. *See* ROA.47-48.

## V.    **All remaining factors support an injunction pending appeal.**

Besides success on the merits, Appellants meet the remaining factors for a preliminary injunction. *Rest. L. Ctr. v. U.S. Dep't of Lab.*, 66 F.4th 593, 597 (5th Cir. 2023).

The threat of irreparable injury is manifest. As the factual background and attached declarations show, Appellants will suffer

irreparable harm from not being able to enter into real estate transactions. Wang will have to either incur substantial additional costs or move out of Texas if SB 17 were to go into effect. And because Mr. Wang is on an F-1 visa, leaving Texas likely means leaving the country. Li likewise may have to leave Texas. And while she would eventually like to purchase a home in Texas (which would be permitted under the homestead exception), she also would like to purchase a second home in Houston, ROA.107—which SB 17 would still prohibit. This is irreparable injury. *E.g. Tioronda, LLC. v. New York,* 386 F. Supp. 2d 342, 350 (S.D.N.Y. 2005) ("deprivation of an interest in real property constitutes irreparable harm"); *Entine v. Lissner*, 2017 WL 5507619, at *9 (S.D. Ohio Nov. 17, 2017) (inability to live where one wants is irreparable harm); *Portee v. Morath*, 683 F. Supp. 3d 628, 636 (W.D. Tex. 2023) (inability to enter into preferred business or profession irreparable harm).

Meanwhile, Texas has no interest in enforcing a law that violates federal law or the Constitution. *Book People, Inc. v. Wong*, 91 F.4th 318, 341 (5th Cir. 2024). And, similarly, the public interest is never "harmed by preventing the enforcement of unconstitutional laws and unlawful

rules." *Smith v. Dep't of Treasury*, 761 F. Supp. 3d 952, 972 (E.D. Tex. 2025).

## CONCLUSION

The Court should reverse the decision of the District Court and instruct the District Court to provisionally certify a class and issue an injunction prohibiting the Attorney General from enforcing SB 17 against the class. In the alternative, the Court should grant the Appellants' pending Motion to Certify to the Texas Supreme Court and defer a ruling until the Texas Supreme Court makes its determination.

September 19, 2025

Respectfully submitted,

/s/ Justin Sadowsky
Justin Sadowsky
CHINESE AMERICAN
LEGAL DEFENSE
ALLIANCE
4250 N. Fairfax Drive #600
Arlington, VA 22203
646-785-9154
justins@caldausa.org

Keliang (Clay) Zhu
CHINESE AMERICAN
LEGAL DEFENSE
ALLIANCE
7901 Stoneridge Drive #208
Pleasanton, CA 94588
925-399-6702
czhu@dehengsv.com

*Attorneys for Plaintiffs-Appellants*

# CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1: this document contains 8,900 words.

2. This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because:

this document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in Century Schoolbook 14-point font.

/s/Justin Sadowsky