No. 25-20354

# In the United States Court of Appeals for the Fifth Circuit

PENG WANG,

*Plaintiff-Appellant,*

*v.*

KEN PAXTON, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF TEXAS,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Southern District of Texas, Houston Division

## BRIEF FOR APPELLEE

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

WILLIAM R. PETERSON
Solicitor General

BENJAMIN WALLACE MENDELSON
Assistant Solicitor General
Ben.Mendelson@oag.texas.gov

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Counsel for Appellee

# CERTIFICATE OF INTERESTED PERSONS

No. 25-20354

PENG WANG,

*Plaintiff-Appellant,*

*v.*

KEN PAXTON, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF TEXAS,

*Defendant-Appellee.*

Under the fourth sentence of Fifth Circuit Rule 28.2.1, appellee, as a governmental party, need not furnish a certificate of interested persons.

/s/ Benjamin Wallace Mendelson

BENJAMIN WALLACE MENDELSON
*Counsel of Record for*
*Defendant-Appellee*

i

## Statement Regarding Oral Argument

The Court has already set oral argument in this appeal for November 4, 2025. Appellee will participate.

# Table of Contents

Page

Certificate of Interested Persons ................................................................i

Statement Regarding Oral Argument ..........................................................ii

Table of Authorities ................................................................................iv

Introduction .......................................................................................... 1

Statement of Jurisdiction ......................................................................... 2

Issues Presented .................................................................................... 2

Statement of the Case ............................................................................. 3

    I.   Statutory Background ........................................................................ 3

    II.  Factual and Procedural Background .................................................... 5

Summary of the Argument ........................................................................ 8

Standard of Review ................................................................................ 10

Argument............................................................................................. 10

    I.   Wang Lacks Standing to Bring This Suit............................................ 10

        A.  SB 17 does not apply to Wang................................................ 10

            1.   Wang has not pleaded that he is domiciled in China. .............. 11

            2.   Wang is domiciled in the United States and Texas. .................. 16

            3.   Wang's contrary arguments are incorrect. .............................. 16

        B.  Wang faces no credible threat of enforcement. .......................... 26

            1.   Wang has not pleaded that a credible threat of enforcement exists. ........................................................................... 26

            2.   Wang's remaining arguments fail. ....................................... 29

        C.  Wang has not established traceability. ..................................... 31

    II.  Sovereign Immunity Bars this Suit.................................................... 32

        A.  Wang has not pleaded a demonstrated willingness to enforce........... 33

        B.  Wang has not pleaded acts of compulsion or constraint.................... 35

    III.  The Court Should Not Reach Wang's Remaining Arguments. ............... 35

Conclusion........................................................................................... 38

Certificate of Service.............................................................................. 39

Certificate of Compliance ........................................................................ 39

# Table of Authorities

Page(s)

**Cases:**

*A&R Eng'g & Testing, Inc. v. Scott*,
   72 F.4th 685 (5th Cir. 2023) .........................................................................31, 32

*Cadena Com. USA Corp. v. Tex. Alcoholic Beverage Comm'n*,
   518 S.W.3d 318 (Tex. 2017) .......................................................................... 21

*Clapper v. Amnesty Intern. USA*,
   568 U.S. 398 (2013) ...................................................................................... 29, 32

*Coury v. Prot*,
   85 F.3d 244 (5th Cir. 1996) .................................................................14, 17, 24

*Cross v. Everts*,
   28 Tex. 523 (Tex. 1866) ................................................................................ 12

*Ctr. for Biological Diversity v. EPA*,
   937 F.3d 533 (5th Cir. 2019) ...................................................................... 15-16

*Forest Oil Corp. v. El Rucio Land & Cattle Co.*,
   518 S.W.3d 422 (Tex. 2017) ........................................................................ 17

*Franyutti v. Franyutti*,
   No. 04-02-00786-CV, 2003 WL 2265879 (Tex. App.—San
   Antonio Nov. 12, 2003, no pet.) ...................................................................24

*In re Gee*,
   941 F.3d 153 (5th Cir. 2019) ....................................................................... 36

*Greater Hous. P'ship v. Paxton*,
   468 S.W.3d 51 (Tex. 2015) ........................................................................... 12

*Huang v. Paxton*,
   No. 1:25-cv-01509-ADA (W.D. Tex.) ..............................................................32

*Kaswatuka v. U.S. Dep't of Homeland Sec.*,
   7 F.4th 327 (5th Cir. 2021) .......................................................................... 10

*La Union Del Pueblo Entero v. Abbott*,
   151 F.4th 273 (5th Cir. 2025) ..................................................................... 27, 28

*Landor v. La. Dep't of Corrections & Pub. Safety*,
   82 F.4th 337 (5th Cir. 2023) ........................................................................ 21

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) .............................................................................10, 15, 30

*Mi Familia Vota v. Ogg,*
    105 F.4th 313 (5th Cir. 2024) ................................................... 31, 32, 33, 34, 35

*Montano v. Texas,*
    867 F.3d 540 (5th Cir. 2017) ................................................................. 36

*Nat'l Fed'n of the Blind of Tex., Inc. v. Abbott,*
    647 F.3d 202 (5th Cir. 2011) ................................................................. 36

*Nat'l Press Photographers Ass'n. v. McCraw,*
    90 F.4th 770 (5th Cir. 2024) ...................................................... *passim*

*Nieto v. Nieto,*
    No. 04-11-00807-CV, 2013 WL 1850780 (Tex. App.—San Antonio
    May 1, 2013, pet. denied) ...................................................................... 24

*In re Off. of the Att'y Gen. of Tex.,*
    456 S.W.3d 153 (Tex. 2015) .................................................................. 12

*Palau v. Sanchez,*
    No. 03-08-00136-CV, 2010 WL 4595705 (Tex. App.—Austin Nov.
    10, 2010, pet. denied) ...................................................................... 23, 24

*Peacock v. Bradshaw,*
    194 S.W.2d 551 (Tex. 1946) .................................................................. 12

*Rollins v. Home Depot USA,*
    8 F.4th 393 (5th Cir. 2021) ................................................................... 15

*Sossamon v. Lone Star State of Tex.,*
    560 F.3d 316 (5th Cir. 2009) ................................................................. 30

*State v. Stephens,*
    663 S.W.3d 45 (Tex. Crim. App. 2021) ............................................. 5, 31

*Steel Co. v. Citizens for a Better Env't,*
    523 U.S. 83 (1998) ................................................................................. 27

*In re Swart,*
    581 S.W.3d 844 (Tex. App.—Dallas 2019, orig. proceeding) .......... 21, 22, 23, 24

*Tawakkol v. Vasquez,*
    87 F.4th 715 (5th Cir. 2023) ................................................................. 32

*Texas State LULAC v. Elfant,*
    52 F.4th 248 (5th Cir. 2022) ............................................................ 26, 29

*Texas v. Yellen,*
    105 F.4th 755 (5th Cir. 2024) ............................................................... 27

*Turtle Island Foods, S.P.C. v. Strain,*
    65 F.4th 211 (5th Cir. 2023) ................................................................. 29

**Constitutional Provisions, Statutes, and Rules:**

8 U.S.C. § 1101(a)(15)(F)(i) ...................................................20

28 U.S.C.
    § 1291 ..................................................................................2
    § 1331..................................................................................2
    § 1332 .............................................................................. 14
    § 1332(a)(1) ..................................................................... 14

8 C.F.R.
    § 214.2(iv) ................................................................. 18, 23
    § 214.2(f)(5)(i) ......................................................... 18, 23

22 C.F.R. § 41.61(b)(1)(iv) .......................................... 16, 20

Fed. R. App. P. 4(a)(1)(A) ...................................................2

19 Tex. Admin. Code
    § 21.22(7) .........................................................................20
    § 21.22(9) .........................................................................20
    § 21.24(d)(3) ....................................................................20

Tex. Const. art. 5, § 21 .................................................... 31

Tex. Educ. Code
    § 54.052 .....................................................................19, 21
    § 54.057(a) ..................................................................... 19
    § 54.0501 ........................................................................ 21
    § 54.0501(3) ................................................................... 19

Tex. Fam. Code § 6.301(1) ................................................22

Tex. Gov't Code § 311.032(a) ..................................... 36-37

Tex. Prop. Code
    § 5.251(3)(A)-(B) .............................................................3
    § 5.251(3)(A) .....................................................................4
    § 5.251(4)............................................................ 4, 6, 11, 20
    § 5.252(1) ....................................................................17, 21
    § 5.252(1), (3) ...................................................................5
    § 5.253 ...............................................................................4
    § 5.253(1)-(2) ....................................................................4
    § 5.253(1)-(3) ................................................................. 36
    § 5.253(4)(A) ...........................................................*passim*

§ 5.253(4)(A)-(E) ........................................................... 11, 21
§ 5.253(4)(B)(i)-(ii) ........................................................... 15
§ 5.253(4)(B)-(E) ........................................................ 5, 13, 36
§ 5.253(4)(C) ................................................................17, 21
§ 5.255(a) ............................................................................. 5
§ 5.255(c)(1) ........................................................................ 5
§ 5.258 ................................................................................. 5
§ 5.259 ................................................................................. 5
Tex. Tax Code
§ 11.13(j) ........................................................................... 25
§ 11.13(j)(1)(D) .................................................................. 25
Tex. R. App. P. 47.7(b) ........................................................ 23

**Other Authorities:**

Act of May 25, 2005, 79th Leg., R.S., ch. 888, § 3................................. 19
Off. of the Dir. of Nat'l Intel., *Annual Threat Assessment of the U.S.
    Intelligence Community* 9 (Mar. 2025),
    https://www.dni.gov/files/ODNI/documents/assessments/ATA-
    2025-Unclassified-Report.pdf. ......................................................4
Tex. Atty. Gen. Op. JM-241, 1984 WL 182307 ................................... 19
Tex. Atty. Gen. Op. JM-309, 1985 WL 189741................................... 19
U.S. Dep't of State, Bureau of Consular Affairs, *Student Visa*,
    https://travel.state.gov/content/travel/en/us-
    visas/study/student-visa.html ...................................................... 18

# Introduction

This case presents a jurisdictional minefield and hangs by a thread. Plaintiff Peng Wang, the only remaining plaintiff in this case, insists that he has standing to challenge Senate Bill 17, a Texas statute that prohibits individuals domiciled in China from purchasing real property in Texas. Wang contends that he is domiciled in China within the meaning of that statute even though he has lived in Texas for sixteen years, is seeking a master's degree in Texas, intends to seek employment in Texas after he graduates, and even admits that he has "no real plans to return to China." There is no possibility that he is domiciled in China. But even if the statute could be read to apply to him, Wang has failed to establish a credible threat of enforcement within the meaning of standing's injury prong. Nor could he because the Attorney General told the district court three times that he would not enforce the statute against Wang. To avoid that problem, Wang asks the court to "assume" a credible threat of enforcement, but this Court has at least twice held that such a standard applies only in First Amendment pre-enforcement challenges.

There's more. Wang never argues why he meets standing's traceability prong, and he cannot do so because the Court has held that in the absence of any enforcement action on the part of the Attorney General, there is no traceability as to him. Perhaps most problematic for Wang, he cannot overcome sovereign immunity. Like many cases before it, this case involves a plaintiff who alleges that a statute is unconstitutional when no evidence suggests that the actual defendant official has shown a "demonstrated willingness" to enforce the statute or engaged in "compulsion or constraint" within the meaning of the Court's sovereign immunity jurisprudence.

Despite all of these obstacles and even though the district court held only that he lacked standing, Wang asks the Court to reach the merits in the first instance and issue a writ of erasure against the whole statute, even though he has only ever alleged that one of its many provisions applies to him. The Court should reject Wang's request to take hypothetical jurisdiction and issue a hypothetical judgment, much less before the district court has even addressed his claims.

## Statement of Jurisdiction

Plaintiffs invoked the district court's subject-matter jurisdiction because this case arises under the Constitution and laws of the United States. 28 U.S.C. § 1331; ROA.11-12. But the district court lacked jurisdiction for the reasons discussed below. This Court has appellate jurisdiction over the district court's order granting the Defendant's motion to dismiss for lack of jurisdiction because it is a final decision of the district court that disposes of all claims. *See* 28 U.S.C. § 1291; ROA.271-72. The district court entered its judgment on August 18, 2025, ROA.272, and Plaintiffs timely appealed on August 19, 2025, ROA.273; Fed. R. App. P. 4(a)(1)(A).

## Issues Presented

The issues presented are:

1.  Whether Wang lacks standing to bring this suit.

2.  Whether sovereign immunity bars this suit.

3.  Whether the Court should reach Wang's remaining arguments.

## Statement of the Case

### I. Statutory Background

The Texas Legislature recently passed a new statute designed to combat the growing national security threats posed by foreign countries like China, Iran, Russia, and North Korea. That statute, called Senate Bill 17, begins by making several factual findings based on the United States Director of National Intelligence's 2025 Annual Threat Assessment. *See* ROA.168. Relevant here, the Legislature found that China uses "an aggressive whole-of-government approach, combined with state direction of the private sector, to become a global science and technology superpower. It wishes to surpass the United States and achieve further economic, political, and military gain." ROA.168. To do so, it uses "illicit means," has "stolen hundreds of gigabytes of intellectual property across the world, including from the United States," is "heavily investing in collecting health and genetic data," "poses health risks to the world," and "will continue to expand its coercive, subversive, and malignant influence activities to weaken the United States." ROA.168. To accomplish these things, China "has increased its capabilities to conduct covert influence operations." ROA.168. Senate Bill 17 made additional findings regarding threats posed by Russia, Iran, and North Korea. ROA.168. Based on these threats, the Legislature found it "necessary to exercise the police power of this state," ROA.169, and restricted China, Russia, Iran, North Korea, and those connected to them in specified ways from acquiring an interest in real property in Texas.

Relevant here, Senate Bill 17 begins by defining the term "designated country." Tex. Property Code § 5.251(3)(A)-(B). That term means "a country identified by

the United States Director of National Intelligence as a country that poses a risk to the national security of the United States in at least one of the three most recent Annual Threat Assessments of the U.S. Intelligence Community." *Id.* § 5.251(3)(A). Presently, that includes China, which the DNI explains "stands out as the actor most capable of threatening U.S. interests globally."[1]

Once a country is designated, certain entities and individuals associated with it "may not purchase or otherwise acquire an interest in real property" in Texas. Tex. Prop. Code § 5.253. That includes "a governmental entity of a designated country" and certain companies associated with them. *Id.* § 5.253(1)-(2). The statute also prohibits certain individuals from purchasing land too. Relevant here, that includes an individual who "is *domiciled* in a designated country, except that an individual who is lawfully present and residing in the United States at the time the individual purchases or acquires the interest may purchase or acquire an interest in a residential property that is intended for use as an individual's residence homestead." *Id.* § 5.253(4)(A) (emphasis added). The term "domiciled" is defined as "having established a place as an individual's true, fixed and permanent home and principal residence to which the individual intends to return whenever absent." *Id.* § 5.251(4).

The statute also prohibits four other categories of individuals from acquiring an interest in real property. That includes citizens of designated countries domiciled outside the United States in a third country who are not citizens of that third country,

---

[1] Off. of the Dir. of Nat'l Intel., *Annual Threat Assessment of the U.S. Intelligence Community* 9 (Mar. 2025), https://www.dni.gov/files/ODNI/documents/assessments/ATA-2025-Unclassified-Report.pdf.

citizens of designated countries who are in the United States illegally, non-U.S. citizens acting as agents of a designated country, and individuals who are members of the ruling political party in a designated country. *Id.* § 5.253(4)(B)-(E).

SB 17 also contains several categorical exceptions. The statute does not apply to citizens or lawful permanent residents of the United States, nor does it apply to leases of less than one year. *Id.* § 5.252(1), (3).

Finally, SB 17 permits the Attorney General to bring in rem actions against real property if he determines that a violation has occurred. *Id.* § 5.255(c)(1). He may also seek civil penalties against "a company or entity" that violates the statute. *Id.* § 5.259. The statute also creates criminal penalties that district attorneys may enforce. *Id.* § 5.258. The Texas Attorney General, however, has no independent power to prosecute crimes. *State v. Stephens*, 663 S.W.3d 45, 55-56 (Tex. Crim. App. 2021). Finally, SB 17 directs the Attorney General to "establish procedures to examine a purchase or acquisition of an interest in real property and determine whether an investigation of a possible violation . . . is warranted." *Id.* § 5.255(a). To date, the Attorney General has not done so. The statute took effect on September 1, 2025. ROA.173.

## II. Factual and Procedural Background

Plaintiff Peng Wang is a citizen of China. ROA.17. He is neither a citizen nor permanent resident of the United States but has lived in Texas for the past 16 years. ROA.17-18. He currently holds an F-1 visa, a type of student visa, and is pursuing a Master of Divinity degree at a seminary in Fort Worth where he lives. ROA.17-18, 66. He expects to graduate in late 2026 or early 2027 and hopes "to work as a worship

pastor at a local church." ROA.66. He has "built" his "social network" in Texas. ROA.66. He is also a musician and plays musical instruments at several local orchestras and leads Sunday worship services at a local church. ROA.66. Presently, Wang rents a home, and his current lease expires in December. ROA.18. After that lease expires, he wishes "to continue renting an apartment in the greater Fort Worth–Dallas area to finish [his] degree and seek employment opportunities to become a pastor." ROA.67. He contends that renting for less than a year is too expensive and causes uncertainty. ROA.18. He has "always believed that the United States is the land of opportunity and equality, and everyone has a chance to realize the American Dream." ROA.68.

Peng Wang, along with two former Plaintiffs, Qinlin Li and Yisi Wang (no relation to Peng Wang, ROA.297), brought this action on behalf of themselves and a putative class against Attorney General Ken Paxton. ROA.9. They alleged that SB 17 is preempted by certain "federal regimes governing foreign affairs," violates the Fourteenth Amendment's Equal Protection Clause, and is preempted by the Fair Housing Act. ROA.27-32. They moved for a preliminary injunction, and in that motion, Peng Wang reiterated that he has "no real plans to return to China." ROA.85.

The Attorney General moved to dismiss the complaint on several grounds, including lack of standing. He explained that "[n]one of the three plaintiffs are governed by the provisions of SB 17." ROA.156. Even though all three are citizens of China, none met SB 17's definition of "domiciled" in China, so the statute does not apply to them. ROA.159; Tex. Prop. Code §§ 5.251(4), 5.253(4)(A). As to Peng Wang specifically, the Attorney General noted that he is not domiciled in China

because he has lived in the United States for sixteen years, is pursuing a degree in Fort Worth, and intends to work as a local pastor in Texas when he graduates. ROA.158.

Two days after the Attorney General moved to dismiss, former plaintiff Yisi Wang voluntarily dismissed her claims. ROA.207. She did so because she "believed that assurances in the briefing of Defendant Ken Paxton established that she faced no threat of prosecution under the challenged law." ROA.227.

The district court held a hearing that largely focused on the issue of standing. The district court asked if the Attorney General had "taken the express position that this law does not apply to [the plaintiffs]" and cannot be applied to them. ROA.302. The Attorney General responded "[e]xactly." ROA.302. The district court then asked if that was a "binding representation for any similarly situated Plaintiff," and the Attorney General responded, "[a]greed." ROA.302. Later in the hearing, the district court again asked if it was the Attorney General's "commitment" that SB 17 "will not be applied to the two plaintiffs in this case, correct?" ROA.334. The Attorney General responded, "[c]ompletely agree." ROA.334.

The district court dismissed the case for lack of standing. It held that under SB 17's "domicile" provision, "the question isn't whether Plaintiffs are domiciled *in Texas*" but whether they are domiciled in a designated country, such as China. ROA.266. "[G]iven the duration of their continual residence in Texas and stated intention to remain here, it simply can't be said that [Plaintiffs] are presently domiciled in China." ROA.266. The district court continued that what "matters is that

Plaintiffs have stated their intention to remain in Texas—not China—for so long as lawfully allowed by the United States." ROA.266-67.

The district court further held that even if the statute applied to the Plaintiffs, there was no substantial threat of future enforcement against them because the Attorney General clearly represented in court that the statute does not and cannot be applied to these Plaintiffs. ROA.267. Those representations were entitled to the presumption of good faith given to state actors. ROA.269. Thus, the district court granted the Attorney General's motion to dismiss. ROA.271.

The two remaining Plaintiffs appealed to this Court. ROA.273. They also sought an injunction pending appeal in the district court. ROA.274. The district court denied that motion. ROA.288-90. The Plaintiffs then sought an injunction pending appeal in this Court and moved to certify the question of what the term "domiciled" means to the Texas Supreme Court. The Court denied the injunction pending appeal and carried with the case the motion to certify. Court Order, ECF No. 44. Shortly after filing an opening brief, former plaintiff Qinlin Li moved to voluntarily dismiss her appeal, which this Court granted, leaving Peng Wang as the only Plaintiff-Appellant left in the case. Clerk Order, ECF No. 60.

## Summary of the Argument

Wang lacks standing to bring this suit. Senate Bill 17 applies to individuals domiciled in China, and Wang is not. Wang assumes that because he is not domiciled in the United States, then he must be domiciled in China, but that is a non sequitur. Wang may have no domicile within the meaning of SB 17, and he may be domiciled elsewhere in the world, but he is not domiciled in China. Alternatively, Wang is

8

clearly domiciled in the United States because he has lived here sixteen years, intends to seek employment here after he graduates, and even told the district court that he has no real plans to return to China.

Even if SB 17 applied to Wang, he has not shown a credible threat of enforcement because the Attorney General repeatedly told the district court that he would not enforce the statute against Wang. In an attempt to avoid this problem, Wang asks the Court to apply a standard that the Court has at least twice held applies only in First Amendment cases. Finally, Wang offers no argument on standing's traceability prong, and he cannot meet it because he has alleged no acts of enforcement by the Attorney General.

Sovereign immunity also bars this suit. The record reflects no demonstrated willingness to enforce SB 17 on the part of the Attorney General, nor any evidence to suggest that he has engaged in compulsion or constraint vis-à-vis that statute. This case is no different from many others in which a plaintiff has challenged a statute but lost because he could not show that the relevant defendant official had taken any action to enforce it. The Court should not change course by issuing a hypothetical judgment.

Finally, the Court should not reach Wang's merits arguments. The district court held only that Wang lacked standing, and this is a court of review and not first view. And in any event, Wang asks the Court to enjoin enforcement of the entire statute even though he has only ever alleged that he has standing to challenge one single provision of it. That is improper.

## Standard of Review

The Court reviews a district court's grant of a motion to dismiss for lack of sub-ject-matter jurisdiction de novo. *Kaswatuka v. U.S. Dep't of Homeland Sec.*, 7 F.4th 327, 329 (5th Cir. 2021).

## Argument

## I.  Wang Lacks Standing to Bring This Suit.

Article III standing requires a plaintiff to plead a concrete and particularized in-jury, fairly traceable to the defendant's challenged conduct, and likely redressable by the requested relief. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). The Plain-tiff bears the burden to establish these elements. *Id.* at 561. In the context of a pre-enforcement suit, a plaintiff must show "(1) an intention to engage in a course of conduct arguably affected with a constitutional interest, (2) his intended future con-duct is arguably proscribed by the policy in question, and (3) the threat of future en-forcement of the challenged policies is substantial." *Nat'l Press Photographers Ass'n. v. McCraw*, 90 F.4th 770, 782 (5th Cir. 2024) (cleaned up). Wang has not met the second and third elements of this test because he has not pleaded facts showing that he is domiciled in China, and he has not pleaded any threat that the Attorney General will attempt to enforce SB 17 against him.

### A.  SB 17 does not apply to Wang.

SB 17 applies to five categories of individuals: (1) those "domiciled in a desig-nated country;" (2) citizens of designated countries who are domiciled outside the United States in a third country in which they are not citizens; (3) citizens of desig-nated countries unlawfully present in the United States; (4) non-U.S. citizens acting

as agents of a designated country; and (5) members of the ruling political party in a designated country. Tex. Prop. Code § 5.253(4)(A)-(E). Of these five categories, Wang contends only that he meets the first. Appellant.Br.17. His declaration states that he holds an F-1 student visa, is not a member of the Chinese communist party, has no affiliation with the Chinese government, ROA.66, and he does not argue that he is domiciled outside the United States in a third country. Accordingly, SB 17 applies to him only if he is domiciled in a designated country.

SB 17 applies to individuals who are "domiciled in a designated country" like China. Tex. Prop. Code § 5.253(4)(A). SB 17 defines the term "domiciled" as "having established a place as an individual's true, fixed, and permanent home and principal residence to which the individual intends to return whenever absent." *Id.* § 5.251(4). SB 17 does not apply to Wang for two alternative reasons. First, Wang is not domiciled in China even if he is not domiciled in the United States because SB 17 does not require that one must be domiciled somewhere at all times. Second, alternatively, Wang is domiciled in the United States for purposes of SB 17.

### 1.    Wang has not pleaded that he is domiciled in China.

Wang's analysis proceeds from the wrong premise. The question is not whether Wang is domiciled in the United States but rather whether he is domiciled in China. *Contra* Appellant.Br.17. That is because SB 17 applies to individuals who are "domiciled in a designated country" like China; it does not apply to everyone except individuals domiciled in the United States. Tex. Prop. Code § 5.253(4)(A).

Wang has not pleaded facts to show that he is domiciled in China. Rather, Wang assumes that he must be domiciled in China because he is a Chinese citizen and does

11

not believe that he is domiciled in the United States. *See* Appellant.Br.8, 17. But that is a non sequitur.

Even if Wang is not domiciled in the United States, it does not follow that he must be domiciled in China. Wang's argument depends on the premise that he has not lost his previous domicile until he has acquired a new one. It is true that some old Texas Supreme Court decisions have articulated that principle while interpreting the common law or different statutes. *See Cross v. Everts*, 28 Tex. 523, 533 (Tex. 1866); *Peacock v. Bradshaw*, 194 S.W.2d 551, 555 (Tex. 1946) (A "domicile which has once attached is retained until a new domicile is attained."). But those cases were decided long before SB 17, and there is no support for such a proposition in the language of SB 17.

"When construing statutes, or anything else, one cannot divorce text from context. The meaning of words read in isolation is frequently contrary to the meaning of words read contextually in light of what surrounds them. Given the enormous power of context to transform the meaning of language, courts should resist rulings anchored in hyper-technical readings of isolated words or phrases." *In re Off. of the Att'y Gen. of Tex.*, 456 S.W.3d 153, 155 (Tex. 2015). Most relevant here, the "canon of statutory construction known as *noscitur a sociis*—'it is known by its associates'—holds that the meaning of a word or phrase, especially one in a list, should be known by the words immediately surrounding it." *Greater Hous. P'ship v. Paxton*, 468 S.W.3d 51, 61 (Tex. 2015). The Texas Supreme Court relies "on this principle to avoid ascribing to one word a meaning so broad that it is incommensurate with the statutory context." *Id.*

Applying that canon of construction, especially in combination with the statute's plain language, the term "domicile" as used in SB 17 does not require an individual to acquire a new domicile in the United States in order to abandon a previous domicile in a designated country like China. Every provision on the list of individuals prohibited from purchasing real property in Texas references those with specific connections to designated countries. That includes citizens of designated countries domiciled outside the United States in a third country who are not citizens of the third country, citizens of designated countries unlawfully present in the United States, non-U.S. citizens acting as agents of designated countries, and members of the ruling political party of a designated country. Tex. Prop. Code § 5.253(4)(B)-(E). Because all four of those categories of individuals reference those with a specific type of affirmative connection to designated countries, it makes sense that the only other category, those domiciled in a designated country, should also apply only to those who are still connected to a designated country. Thus, if an individual no longer resides in China and has no intent to return there, then he is not "domiciled in a designated country" for purposes of SB 17, even if he is not domiciled in the United States or is domiciled nowhere within the meaning of SB 17. *Id.* § 5.253(4)(A).

Such an interpretation makes sense in light of SB 17's stated purposes. The Legislature included a detailed list of findings, all of which focus on the adverse activities of the designated countries. For example, China "will continue to expand its coercive, subversive, and malignant influence activities to weaken the United States," Russia "intentionally stokes political discord in the West," Iran has "previously tried to conduct lethal operations in the United States," and North Korea

"continues to pursue military capabilities that threaten the United States." ROA.168-69. That all of the Legislature's findings focus on the malignant actions of the designated countries suggests that if an individual abandons the types of ties to that country that the statute prohibits, then the statute does not apply. Thus, if one abandons his residence in China with no intent to return, then he is not domiciled in China, even if he has no other domicile within the meaning of SB 17.

Of course, the term "domicile" is perhaps most familiar to the federal courts in the context of interpreting the diversity statute. *See* 28 U.S.C. § 1332. Under that statute, federal courts have original jurisdiction over actions between citizens of different States. *Id.* § 1332(a)(1). And to be a citizen of a state, a person must be domiciled in that State. *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996). In that context, every person has a domicile somewhere such that a person's domicile persists until a new one is acquired. *Id.* at 250. Such a rule makes sense in that context because if a person is not domiciled anywhere, then federal courts cannot determine if they have diversity jurisdiction. But that concern is not present in the context of SB 17. Rather, SB 17 can still function if a person has no domicile because the statute asks only whether a person is domiciled in a designated country. If he is not, the domicile provision does not apply.

Nor has Wang submitted facts demonstrating that he was domiciled in China immediately before moving to the United States. Although Wang is a citizen of China, he could have lived and established a domicile in a limitless number of countries between the time that he lived in China and the time that he entered the United States. That is, Wang could have established a domicile in China by birth, moved to

any other country or series of countries, established domiciles in those places, and later moved to the United States. Similarly, Wang may not have been born in China. He may have been born in a third country and acquired Chinese citizenship through familial or marital ties and never lived in China with an intent to remain there indefinitely. In either scenario, Wang would never have been domiciled in China. It is Wang's burden to plead facts to establish standing, *see Lujan*, 504 U.S. at 561, and he did not plead facts sufficient to show that he was ever domiciled in China, much less domiciled in China immediately before entering the United States. Rather, Wang stated that he is a Chinese citizen, has lived in Texas for sixteen years, and holds a student visa. ROA.17, 66. Even if one accepts the premise that Wang must have a domicile somewhere under SB 17, his factual allegations leave open the possibility that he could be domiciled in a limitless number of countries other than China.

Nor does it matter that SB 17 applies to individuals domiciled in a third country who are not citizens of that country. Tex. Prop. Code § 5.253(4)(B)(i)-(ii). Wang could be domiciled nowhere, and Wang did not argue in the district court or in his opening brief that this provision of SB 17 applies to him, so the argument is forfeited. *Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021); *see* Appellant Br.17-20; ROA.265 (showing that Wang presented argument to the district court only about the applicability of § 5.253(4)(A)). "Arguments in favor of standing, like all arguments in favor of jurisdiction, can be forfeited." *Ctr. for Biological Diversity v. EPA*, 937 F.3d 533, 542 (5th Cir. 2019). That includes by "[c]ompletely omitting a theory of injury" such as whether a separate statutory provision may apply to Wang. *Id.* at

542 n.4. Further, Wang did not plead that he is not a citizen of any other countries such that the third-country domicile provision could apply. ROA.17-18. Wang has not pleaded the necessary facts to show that he is domiciled in China, and he cannot raise new theories of injury for the first time on appeal.

### 2.   Wang is domiciled in the United States and Texas.

Though it is not necessary to be domiciled in the United States in order to be exempt from SB 17, Wang is in fact domiciled in the United States and Texas for purposes of SB 17. Wang has lived in Texas for sixteen years, "built" his "social network" in Texas, attends a seminary in Texas, and plans "to work as a worship pastor at a local church" when he graduates. ROA.66. More specifically, he wishes to "continue renting an apartment in the greater Fort-Worth Dallas area to finish [his] degree and seek employment opportunities to become a pastor." ROA.67. He has also stated that he has "no real plans to return to China." ROA.85. In short, Wang has had an established residence in Texas for years, and he does not intend to return to China because he plans to find a job as a pastor in the Dallas–Fort Worth area after he graduates and has admitted in court that he has no real plans to return to China. So he is domiciled in Texas.

### 3.   Wang's contrary arguments are incorrect.

To avoid the conclusions that Wang is not domiciled in China and domiciled in the United States, Wang makes a series of arguments, but all fail.

*First*, Wang points out that he holds an F-1 student visa, and that one of the requirements to receive such a visa is that "[t]he alien intends, and will be able, to depart upon termination of student status." 22 C.F.R. § 41.61(b)(1)(iv);

Appellant.Br.17. But that is not what he said in this case. Here, Wang's sworn declaration stated that he intends to "work as a worship pastor at a local church" when he graduates and that he intends to continue renting an apartment in the Dallas–Fort Worth area so that he can finish his degree and seek employment opportunities to become a pastor there. ROA.66-67. He has "no real plans to return to China." ROA.85; Appellant.Br.8. That Wang may have previously told federal immigration authorities at an unknown point in the past that he intended to leave when he finished his studies suggests only that his plans have changed, and this Court must consider the record before it today.

Nor does the SB 17 domicile analysis turn on any specific visa type. SB 17 categorically applies to individuals with only one type of immigration status, being unlawfully present in the United States, Tex. Prop. Code § 5.253(4)(C), and categorically exempts only one kind of immigration status, permanent residency, (and all U.S. citizens), *id*. § 5.252(1). That means all other types of immigration status are not categorically controlling by negative implication because "it is fair to suppose that the legislature considered the unnamed possibility and meant to say no to it." *Forest Oil Corp. v. El Rucio Land & Cattle Co.*, 518 S.W.3d 422, 429 (Tex. 2017) (cleaned up). And as this Court has held, "[i]n determining a litigant's domicile, the court must address a variety of factors. No single factor is determinative," and the "court should look to all evidence shedding light on the litigant's intention to establish domicile." *Coury*, 85 F.3d at 251. Those factors include where a person "owns real or personal property," "belongs to clubs or churches," has "places of business or employment," and "maintains a home for his family." *Id*. As explained above,

Wang plays musical instruments in orchestras in Texas, leads Sunday worship services at a church in Texas, ROA.66, intends to seek employment in Texas, and intends to continue living in Texas. So although his visa is one factor, Wang's plans have clearly changed since he first acquired that visa, and no single factor is determinative.

To the extent that Wang suggests that he is domiciled in China because his visa will expire after he completes his studies, that argument changes nothing. While it is true that an F-1 visa generally expires after the holder completes his studies, (though certain methods to extend it exist), *see* 8 C.F.R. § 214.2(f)(5)(i), (iv), Wang's desire to work as a pastor in Texas *after* graduation and his statements that he has no plans to return to China show that he still has the subjective intent to stay in Texas such that he is not domiciled in China. His intentions to work as a pastor in the Dallas area suggest that he intends to seek a new type of visa after he graduates so that he may remain in the United States legally and work. That is common and the federal government has created many procedures for doing so. *See* U.S. Dep't of State, Bureau of Consular Affairs, *Student Visa*, https://travel.state.gov/content/travel/en/us-visas/study/student-visa.html (explaining that if a student visa holder receives an employment offer in the United States "you may be able to request a change in your nonimmigrant status to another category"). But as the district court held, "what matters" is that Wang has stated his "intention to remain in Texas—not China—for so long as lawfully allowed by the United States." ROA.266-67.

*Second*, Wang points to provisions of Texas law regarding resident tuition at Texas universities in an attempt to show that he is not domiciled in Texas.

Appellant.Br.18-20. It is true that the Texas Education Code provisions governing resident tuition rates use a similar definition of "domicile" as SB 17. *See* Tex. Educ. Code § 54.0501(3); *id.* § 54.052. But the Attorney General opinions that Wang references concluding that F-1 visa holders are not eligible for resident tuition interpret a different statute, not the term domicile. *See* Appellant.Br.18-19. Specifically, those Attorney General opinions interpreted a now-repealed statute defining which categories of immigrants were eligible to apply for resident tuition at Texas public universities.

Under that repealed statute, "an alien who is living in this country under a visa permitting permanent residence or who has filed with the proper federal immigration authorities a declaration of intention to become a citizen has the same privilege of qualifying for resident status for fee purposes under this Act as has a citizen of the United States." Tex. Educ. Code § 54.057(a) (1989); *see* Tex. Educ. Code § 54.057(a) (2001) (amending this statute); Act of May 25, 2005, 79th Leg., R.S., ch. 888, § 3, Tex. Sess. Law Serv. 3000, 3001 (S.B. 1528) (repealing this statute). Interpreting that statute, the Attorney General wrote that it "allows two groups of immigrant aliens to qualify for resident status" and that "the express mention or enumeration of a particular thing in a statute implies an express exclusion of all others." Tex. Atty. Gen. Op. JM-241, 1984 WL 182307, at *1. Thus, other classes of aliens could not establish Texas residency for tuition purposes. It was on that basis that a subsequent Attorney General opinion concluded that F-1 visa holders may be charged an out-of-state tuition rate at public universities. Tex. Atty. Gen. Op. JM-309, 1985 WL 189741, at *1-2. But the Attorney General did not interpret the term "domicile" in

those opinions, and SB 17 contains no statutory language similar to the repealed Education Code provision that he did interpret. Nor does the definition of domicile in SB 17 turn on whether an unrelated and repealed Education Code provision was unconstitutional in certain applications. *Contra* Appellant.Br.18-19.

The administrative rules regarding resident tuition that Wang cites are not relevant either. *See* Appellant.Br.19. In those rules, the Texas Higher Education Coordinating Board has explained who may qualify for resident tuition. Those rules do define the term "domicile" similarly to SB 17's definition. *See* 19 Tex. Admin. Code § 21.22(7). And they explain that an enumerated list of non-U.S. citizens "are eligible to establish and maintain domicile in this state," which excludes F-1 visa holders by negative implication. *Id*. § 21.24(d)(3); 8 U.S.C. § 1101(a)(15)(F)(i); 22 C.F.R. § 41.61(b)(1)(iv). But those rules expressly incorporate federal immigration law in a way that SB 17 does not. The rules explain that certain non-citizens are "eligible to establish and maintain domicile" including "a nonimmigrant who holds one of the types of visas identified as eligible to domicile." *Id*. § 21.24(d)(3). The term "eligible nonimmigrant" is defined as "[a] person who has been issued a type of nonimmigrant visa by the USCIS that permits the person to establish and maintain domicile in the United States." *Id*. § 21.22(9). SB 17's definition of "domicile," by contrast, does not expressly incorporate visa types or federal immigration law. Tex. Prop. Code. §§ 5.251(4), 5.253(4)(A). Thus, the agency rules governing resident tuition define the term "domicile" similarly to that of SB 17, but they expressly incorporate federal immigration law in a way that SB 17 does not.

The statutory provisions under which those rules were promulgated also differ from SB 17. The Education Code provisions defining the term domicile and explaining how to establish a domicile for purposes of paying resident tuition contain no mention of aliens at all, much less different classes of aliens, types of visas, permanent residency, or U.S. citizenship. Tex. Educ. Code § 54.0501; § 54.052. By contrast, SB 17's provisions are exclusively focused on aliens. They enumerate five categories of aliens to whom the statute applies, none of which involve visas. Tex. Prop. Code 5.253(4)(A)-(E). And as explained above, they expressly apply to only one type of immigration status, unlawful presence, and expressly exempt another type of immigration status, permanent residence. *Id.* §§ 5.253(4)(C), 5.252(1). Thus, SB 17 does not categorically apply to any specific type of visa holder by negative implication because Texas courts "presume the Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen." *Cadena Com. USA Corp. v. Tex. Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 325-26 (Tex. 2017). "In law as in life, the same words, placed in different contexts, sometimes mean different things." *Landor v. La. Dep't of Corrections & Pub. Safety*, 82 F.4th 337, 344 (5th Cir. 2023) (cleaned up). "The Supreme Court has often held that identical language may convey varying content when used in different statutes and sometimes even in different provisions of the same statute." *Id.* (cleaned up). This is one of those cases.

*Third*, Wang points to a Texas case in which the court held that a woman on a tourist visa could not file for divorce in Texas because her tourist visa precluded her from establishing a domicile in Texas. *In re Swart*, 581 S.W.3d 844 (Tex. App.—

Dallas 2019, orig. proceeding); Appellant.Br.18. But that case is inapposite. *Swart* involved a Texas divorce statute stating that in order to file for divorce in Texas, at least one party must be "'a domiciliary of this state for the preceding six-month period.'" *Swart*, 581 S.W.3d at 848 (quoting Tex. Fam. Code § 6.301(1)). But the issue in that case was whether the divorce petitioner was domiciled *in Texas*, not whether she was domiciled in a foreign country like China as SB 17 requires in order to apply. *Swart*, 581 S.W.3d at 848-49. As explained above, one does not follow from the other.

Regardless, it would not make sense to determine a person's domicile in the way *Swart* did in the context of SB 17. *Swart* interpreted the Family Code's definition of domicile which uses that term without any reference to specific classes of aliens. *See* Tex. Fam. Code § 6.301(1). In that context, the court disregarded the divorce petitioner's allegation that she intended to live in Texas permanently and concluded that she was not domiciled in Texas based solely on the requirements of her tourist visa, namely, that her visa permitted her to stay in the United States only temporarily and required her to return to her home country every six months. *Id.* at 846, 850. But as explained above, unlike the Family Code, SB 17 carefully applied its prohibitions to five classes of aliens, included only one type of immigration status, and excluded another with no reference to visa types. Thus, SB 17 contemplates that certain visa holders may in fact be domiciled in Texas for SB 17 purposes depending on other factors, even if the terms of their visas give them only temporary status in the United States.

*Swart* is also factually distinct from this case. There, the court did not confront the possibility that a given visa holder could seek subsequent visas because those

were not the facts before it. By contrast, Wang has already lived in the United States for sixteen years and intends to seek employment here following graduation. ROA.66-67. That will necessarily require him to seek a new visa, *see* 8 C.F.R. § 214.2(f)(5)(i), (iv), further showing that he intends to remain in Texas indefinitely.

*Swart* also represents the minority view of Texas courts regarding the evidentiary value of visas in determining who is domiciled in Texas within the meaning of the divorce statute. Although *Swart* disregarded the divorce petitioner's testimony that she intended to live in Texas permanently and conducted the domicile analysis solely by reference to the terms of her visa, 581 S.W.3d at 849-50, at least three other Texas cases from two other appellate courts disagree with that mode of analysis. In one case involving the same divorce statute as *Swart*, the divorce petitioner conceded that she was only in the United States on a "tourist visa," had not sought permanent residence in the United States, and had informed federal officials that her residence was in Mexico. *Palau v. Sanchez*, No. 03-08-00136-CV, 2010 WL 4595705, at *6 (Tex. App.—Austin Nov. 10, 2010, pet. denied).[2] Regardless, the court held that the divorce statute "requires only that a petitioner be a domiciliary of Texas and a resident of the county in which the suit is filed, not that she be a citizen of the United States *or carry a certain type of visa*." *Id.* at *6 (emphasis added). Because the petitioner had testified that she had lived in Texas for several months and intended to stay there, she had established a Texas domicile. *Id.* Another appellate court

---

[2] In Texas, all civil appellate opinions issued after January 1, 2003, are considered precedential even if they do not appear in the Southwest Reporter. Tex. R. App. P. 47.7(b).

followed *Palau*, also holding that the divorce domicile statute requires that the divorce petitioner be domiciled in Texas, "not that she be a citizen of the United States or carry a certain type of visa." *Nieto v. Nieto*, No. 04-11-00807-CV, 2013 WL 1850780, at *5 (Tex. App.—San Antonio May 1, 2013, pet. denied). Thus, visa status was not conclusive in that case either. *See id*. at *6; *see also Franyutti v. Franyutti*, No. 04-02-00786-CV, 2003 WL 2265879, at *1 (Tex. App.—San Antonio Nov. 12, 2003, no pet.) (rejecting the argument that the terms of a tourist visa control the divorce statute's domicile analysis). In sum, *Swart* is an outlier case to the extent it holds that visa terms permit a court to disregard other evidence of domicile for purposes of the divorce statute. The majority view accords with this Court's domicile jurisprudence which holds that "the court must address a variety of factors" to determine domicile and that "[n]o single factor is determinative." *Coury*, 85 F.3d at 251.[3]

*Fourth*, Wang points out that an individual domiciled in a designated country may still purchase real property "that is intended for use as an individual's residence homestead" as defined in the Texas Tax Code. Tex. Prop. Code § 5.253(4)(A). He indicates that homestead exemptions do not apply to renters, which is both correct and irrelevant because SB 17 does not apply to Wang regardless. He also seemingly suggests that if the Attorney General's interpretation of the term "domicile" is correct, then all purchasers of a residence homestead would be domiciled in the United States anyway. Appellant.Br.20. It may be that if an individual can meet the

---

[3] Although SB 17 employs the term domicile differently from other contexts, the statute does not suggest that the types of evidence that may be considered to establish a domicile should differ.

residence homestead requirements, then he may be domiciled in the United States depending on other factors. But that does not mean that the Attorney General's interpretation of the term domicile is incorrect or renders any part of § 5.253(4)(A) surplusage. *Contra* Appellant.Br.20.

SB 17 prohibits individuals domiciled in a designated country from purchasing real property but permits them to purchase a residence homestead within the meaning of Section 11.13(j) of the Texas Tax Code if they are lawfully present and residing in the United States at the time they make that purchase. Tex. Prop. Code § 5.253(4)(A). The cited Tax Code provision requires that a residence homestead be "occupied as the individual's principal residence." Tex. Tax Code § 11.13(j)(1)(D). So the homestead exception in SB 17 simply means that those domiciled in designated countries cannot purchase any type of real property at time 1 except for a residence homestead. But if they eventually purchase a house and meet the residence homestead requirements with that house at time 2, then they may be domiciled in the United States, depending on other relevant factors. Such an interpretation does not render any part of § 5.253(4)(A) surplusage or change the meaning of the term domicile. It just means that if one occupies a house as a principal residence, then he may be domiciled in Texas and the United States.

*Fifth*, Wang asserts that the district court simply relied on the Attorney General's interpretation of the term domicile and its lack of application to Wang rather than independently interpreting and applying the law on its own. Appellant.Br.21. But the district court expressly explained that Wang's accusation was incorrect, ROA.288-89, and Wang is wrong to continue to suggest otherwise. Regardless, this

Court should hold that SB 17 does not apply to Wang for the reasons explained above and without any deference to the Attorney General, just as the district court did.

## B. Wang faces no credible threat of enforcement.

### 1. Wang has not pleaded that a credible threat of enforcement exists.

To establish an Article III injury in the pre-enforcement context, Wang must also show that "the threat of future enforcement of the challenged policies is substantial." *Nat'l Press*, 90 F.4th at 782 (cleaned up). Wang's analysis on that point applies the wrong standard.

Wang incorrectly contends that the court may assume a credible threat of prosecution in the absence of compelling contrary evidence. Appellant.Br.25. But that standard applies only to First Amendment cases. "Unlike in other constitutional contexts, in the speech context, we may *assume* a substantial threat of future enforcement absent compelling contrary evidence." *Nat'l Press*, 90 F.4th at 782. Sometimes, plaintiffs "argue that we must presume a credible threat of prosecution because this is a pre-enforcement challenge. They are mistaken. The presumption Plaintiffs rely on applies to pre-enforcement challenges to recently enacted . . . statutes that facially restrict expressive activity by the class to which plaintiff belongs." *Texas State LULAC v. Elfant*, 52 F.4th 248, 257 (5th Cir. 2022). And though Wang suggests the Court assumed a credible threat of enforcement in the non-First

Amendment case of *Texas v. Yellen*, he is mistaken. Appellant.Br.22; *see* 105 F.4th 755, 765 (5th Cir. 2024).[4]

Thus, in *National Press* the Court emphasized this distinction to explain why the plaintiffs in that case could challenge the statute at issue on First Amendment grounds but not due process grounds. 90 F.4th at 782-83. Because the First Amendment context permitted the Court to assume a substantial threat of future enforcement, the Court found an Article III injury on that ground. *Id.* By contrast, the plaintiffs failed to establish an injury to bring their due process claim against the same statute because they had "never been arrested or prosecuted for violating" that statute, and "the available evidence suggests that Defendants have never enforced [the statute] against Plaintiffs (or anybody else)." *Id.* at 782. Thus, whether the statute violated the Due Process Clause was "a mere hypothetical dispute lacking the concreteness and imminence required by Article III." *Id.*

Relatedly, in a recent case, the Court provided important examples of when a credible threat of prosecution exists and when it does not. In that case, the plaintiffs challenged various provisions of a Texas statute regulating voting. *La Union Del*

---

[4] Although not at issue in this case, the Attorney General does not agree with a standard that permits a court to assume a credible threat of enforcement. Nor does he believe that a court may adjudicate the merits of a dispute if a statute "arguably" applies to a plaintiff. Appellant.Br.22. Though the Attorney General acknowledges that these standards bind this Court, he believes that merely determining that a statute *might* apply to a plaintiff or *assuming* a requirement of standing is a form of hypothetical jurisdiction. "Hypothetical jurisdiction produces nothing more than a hypothetical judgment—which comes to the same thing as an advisory opinion." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998).

*Pueblo Entero v. Abbott*, 151 F.4th 273, 282 (5th Cir. 2025). Relevant here, the Court noted that the mere fact that a statute "directly regulate[s]" a plaintiff "does not *ipso facto* establish injury." *Id*. at 287. The Court held that the plaintiffs in that case had standing to challenge some parts of the voting laws but not others. The plaintiffs had standing to challenge part of the statute because "State witnesses also testified that [the relevant provision] applies to services provided by" one of the plaintiffs. *Id*. at 289. Similarly, the plaintiffs had standing to challenge a different provision because they engaged in activities covered by that provision and "a state witness testified that he would be concerned those activities constitute voter fraud." *Id*. at 290. That testimony "distinguishes these plaintiffs' concrete fears of prosecution under [the relevant statutory provision] from the speculative fears of prosecution under" different provisions such that a credible threat of enforcement existed for the former provisions but not the latter. *Id*.

Thus, *National Press* and *Pueblo Entero* show that, whatever else may be true, when a government official has taken no steps to enforce a statute, then no credible threat of enforcement exists. *National Press* held that when a government official had taken no steps to enforce the relevant statute against the plaintiffs or anyone else, no credible threat of prosecution existed. And *Pueblo Entero* held that a credible threat existed when state witnesses testified that the relevant statutory provisions applied to the plaintiffs, or when they testified that the State was concerned that the plaintiffs' activities were illegal, in contrast to provisions about which the State had said nothing.

Here, Wang has pleaded no facts showing that the Attorney General has taken any steps to enforce SB 17, most specifically the domicile provision, against him or anyone else. And the Attorney General told the district court three times that the statute did not apply to Wang and that he would not enforce it against Wang. *See* ROA.302, 334. Thus, no credible threat of enforcement exists.

### 2. Wang's remaining arguments fail.

Wang raises two arguments suggesting he somehow faces a credible fear of enforcement. Both fail.

*First*, he suggests that the Attorney General's repeated statements to the district court that he will not enforce the statute against Wang do not negate a credible threat of enforcement. Appellant.Br.21, 25; *see* ROA.302, 334. For that proposition, he relies on *Turtle Island Foods, S.P.C. v. Strain*, 65 F.4th 211 (5th Cir. 2023). But that case gets the analysis backwards. *Turtle Island* was a First Amendment case and so applied the unique pre-enforcement standard which requires the Court to "assume a credible threat of prosecution in the absence of compelling contrary evidence." *Id.* at 218. As explained above, that assumption applies only in First Amendment cases. *Nat'l Press*, 90 F.4th at 782; *LULAC*, 52 F.4th at 257. Thus, the Attorney General's statements that SB 17 does not apply to Wang are ultimately immaterial because it is Wang's burden to plead facts showing a credible threat of enforcement, "not the Government's burden to disprove standing by revealing details of its [enforcement] priorities." *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 412 n.4 (2013).

29

Nonetheless, the Attorney General did so anyway.[5] Further, "government actors in their sovereign capacity and in the exercise of their official duties are accorded a presumption of good faith." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 325 (5th Cir. 2009). So the Court should accept the Attorney General's statements in any event.

*Second*, Wang suggests that there may be a credible threat of enforcement from a future Attorney General, a local prosecutor, or even federal law enforcement agencies. Appellant.Br.21-22, 26-27. But none of those officials are before the Court and the Attorney General has no control over any of them, so Wang cannot establish standing's traceability prong as to any of them. Any injury must be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (cleaned up). Wang has also pleaded no facts about any of these unknown individuals, much less whether they intend to prosecute him. Any injury from a future Attorney General is "conjectural" and "hypothetical" and not "actual or imminent" because Wang cannot predict the outcome of Texas's present Attorney General election. *Id*. Nor does the Texas Attorney General have any control over county and district attorneys because they are all officials elected separately from him across the State's 254

_____

[5] Wang's uses of the Attorney General's statements are also internally inconsistent. At one point in his brief, he asks the Court to accept Attorney General opinions as authoritative statements of Texas law. Appellant.Br.18-19. Then a few pages later, he suggests that the Court should disregard the Attorney General's statements that he will not enforce SB 17 against Wang. Appellant.Br.21, 25.

counties. Tex. Const. art. 5, § 21. And more generally, Wang lacks standing to challenge SB 17's criminal penalties because the Attorney General has no independent power to engage in criminal prosecutions as a matter of Texas constitutional law. *Stephens*, 663 S.W.3d at 55-56; *see Mi Familia Vota v. Ogg*, 105 F.4th 313, 318 (5th Cir. 2024); *cf.* Appellant.Br.27.

## C.  **Wang has not established traceability.**

Even though Wang asks this Court to reach the merits, issue an injunction, and provisionally certify a class before the district court has addressed any of those issues, Appellant.Br.28, 42, 44, he does not argue that he has met standing's traceability requirement. That is a separate standing requirement independent of the above-discussed test to establish a pre-enforcement injury.

In *A&R Engineering*, a plaintiff sued the Texas Attorney General and alleged that a Texas statute violated the First Amendment because it required certain state contractors to certify that they did not boycott the State of Israel. *A&R Eng'g & Testing, Inc. v. Scott*, 72 F.4th 685, 687 (5th Cir. 2023). The court ruled that although the plaintiff had established an economic injury, it could not trace that injury to the Attorney General. *Id*. at 690. The Court explained that "traceability is particularly difficult to show where the proffered chain of causation turns on the government's speculative future decisions regarding whether and to what extent it will bring enforcement actions in hypothetical cases." *Id*. The Court then held that the plaintiff had not established traceability because "the Attorney General hasn't taken any action to suggest he *might* enforce the provision even if he has such power. Plaintiffs must assert an injury that is the result of a statute's actual or threatened

*enforcement.*" *Id.* (emphases in original). "And where the plaintiff fails to allege such actual or threatened enforcement, the Supreme Court has instructed us to reject the mere potential for enforcement as a 'highly attenuated,' 'speculative chain of possibilities,' that cannot trace an injury to the government." *Id.* (quoting *Clapper*, 568 U.S. at 410). And in that vein, *Clapper* held that it is the plaintiff's burden to establish standing by pointing to specific facts regarding future enforcement actions, "not the Government's burden to disprove standing by revealing details of its . . . priorities." *Clapper*, 568 U.S. at 412 n.4.

Nonetheless, the Attorney General did so anyway in this case by unequivocally telling the district court that he would not enforce SB 17 against Wang. But even if the Attorney General had not said so, it would not have mattered. It is the Plaintiff's burden to plead facts showing actual or threatened enforcement. Because Wang has pleaded none of those things, he has not established traceability. For all of these reasons, Wang has not established standing.[6]

## II. Sovereign Immunity Bars this Suit.

Although the Attorney General did not raise sovereign immunity below, "sovereign immunity is jurisdictional, and a lack of subject matter jurisdiction may be raised at any time." *Tawakkol v. Vasquez*, 87 F.4th 715, 718 n.2 (5th Cir. 2023). "Generally, state sovereign immunity precludes suits against state officials in their official capacities." *Ogg*, 105 F.4th at 325. "The legal fiction of *Ex parte Young*,

---

[6] Wang's attorney has recently filed a new lawsuit with new plaintiffs that also challenges SB 17. *See Huang v. Paxton*, No. 1:25-cv-01509-ADA (W.D. Tex.).

however, provides an exception." *Id.* "To be a proper defendant under *Ex parte Young*, a state official must have some connection with the enforcement of the law being challenged." *Id.* The Court has articulated three "guideposts" to aid that inquiry. *Id.* "They are: (1) the state official has more than a general duty to see that the laws of the state are implemented, *i.e.* a particular duty to enforce the statute in question; (2) the state official has a demonstrated willingness to exercise that duty; and (3) the state official, through her conduct, compels or constrains persons to obey the challenged law." *Id.* (cleaned up). Here, the second and third requirements are not met.

## A.  Wang has not pleaded a demonstrated willingness to enforce.

To have a "demonstrated willingness to enforce the challenged statute," the state official "must have taken some step to enforce the statute." *Id.* at 329. The "bare minimum appears to be some scintilla of affirmative action by the state official." *Id.* Such action may be shown through past enforcement of the statute. *Id.* "If the plaintiffs bring a pre-enforcement action, as has occurred here, prior enforcement obviously will be lacking. Nevertheless, we still require some scintilla of affirmative action by the state official." *Id.* Importantly, "what is sufficient for standing will not necessarily establish an enforcement connection." *Id.* at 330. That is particularly so when courts adjudicate First Amendment pre-enforcement challenges in which they assume a credible threat of enforcement for standing purposes in the absence of contrary evidence. *See id.* at 329-30. Thus, the Court has rejected that standard in the sovereign immunity context. *Id.* at 330; *see Nat'l Press*, 90 F.4th at 786.

There is no material distinction between the facts of this case and *Ogg* and *National Press* for "demonstrated willingness" purposes. In *Ogg*, the relevant official had "taken no action with respect to the Texas Election Code provisions challenged by the Plaintiffs." 105 F.4th at 330. She "never enforced the challenged provisions in the past," as the "suit was brought only six days after the governor signed [the new bill] and months before its provisions became effective." *Id.* And though a history of prior enforcement was not required, the plaintiffs could not allege any action taken by the official to show a demonstrated willingness to enforce. *Id.*

Similarly, the plaintiffs in *National Press* failed to establish a demonstrated willingness to enforce because the record showed that the relevant officials had only enforced laws similar to, but different from, the statute being challenged. *Nat'l Press*, 90 F.4th at 786. As to the actual statute at issue, the relevant state officials had never enforced it. *Id.* And so while "a scintilla of enforcement by the relevant state official with respect to the challenged law will do," there was "not even an iota of a scintilla. Zilch." *Id.*

*Ogg* and *National Press* squarely apply here. Nothing in the record shows that the Attorney General has taken any action suggesting a demonstrated willingness to enforce SB 17. Wang's complaint says only that the Attorney General is "authorized" to enforce SB 17, ROA.11, and specifically invoked *Ex parte Young* only on the basis of "enforcement authority," ROA.12. But that goes only to the first guidepost of *Ex parte Young. See Ogg*, 105 F.4th at 325. Ultimately, Wang cannot show a demonstrated willingness to enforce because even though "a failure to disavow future prosecutions" is not fatal to an official's claim of sovereign immunity, *id.* at 331, the

34

Attorney General repeatedly told the district court that he would not enforce the statute against Wang, ROA.302, 334.

### B. Wang has not pleaded acts of compulsion or constraint.

"To determine whether an official has a sufficient connection to the challenged statute, we analyze what enforcement means in the context of that statute." *Ogg*, 105 F.4th at 332. "Panels in this circuit have defined enforcement as typically involving compulsion or constraint." *Id.* If the "official does not compel or constrain anyone to obey the challenged law, enjoining that official could not stop any ongoing constitutional violation." *Id.* Here, just as with the "willingness" prong, the record does not reflect any facts showing that the Attorney General has engaged in acts of compulsion or constraint to enforce SB 17. And there could not be because he told the district court that he would not do so against Wang. And importantly, the "existence of the challenged statute" combined with a state official's "authority" to enforce it is "insufficient to demonstrate compulsion or constraint under our *Ex parte Young* precedent." *Id.* The mere fact that the state official "has the authority to enforce" the challenged statute "cannot be said to constrain the party challenging the statute." *Id.* (cleaned up). Nor does the authority to "investigate" violations of a given statute compel or constrain either. *Id.* For these reasons, sovereign immunity bars this suit.

### III. The Court Should Not Reach Wang's Remaining Arguments.

Even though the district court ruled only that Wang lacked standing, ROA.271-72, Wang asks the Court to reach the merits of this case in the first instance and even

provisionally certify a class. Appellant.Br.28, 42. For all the reasons discussed above, the Court lacks jurisdiction to do so. But even if the Court disagrees, the proper remedy would be to reverse the standing holding and remand for further proceedings. "As a court for review of errors," this Court does not "decide facts or make legal conclusions in the first instance, but review[s] the actions of a trial court for claimed errors." *Montano v. Texas*, 867 F.3d 540, 546 (5th Cir. 2017). "In other words, a court of appeals sits as a court of review, not of first view." *Id*. So when the district court does not reach a claim, "the normal course would be to remand for the district court to do so." *Id*.

In any event, the district court also pointed out that even if Wang has standing to challenge the domicile provision of SB 17, he lacks standing to challenge any of its other prohibitions. ROA.270; *see* Tex. Prop. Code § 5.253(1)-(3), (4)(B)-(E).That is correct because Wang has never argued that any other provision of SB 17 applies to him, and "it is now beyond cavil that plaintiffs must establish standing for each and every provision they challenge." *In re Gee*, 941 F.3d 153, 160 (5th Cir. 2019). Wang's attempt to seek a writ of erasure against an entire statute because he allegedly has standing to challenge one provision of it is improper. *See* ROA.35-36 (requesting the court to enjoin enforcement of the entire statute). Further, the district court correctly noted that the domicile provision would be severable in any event. ROA.270. "Whether unconstitutional provisions of a state statute are severable is of course a matter of state law." *Nat'l Fed'n of the Blind of Tex., Inc. v. Abbott*, 647 F.3d 202, 210 (5th Cir. 2011). Under Texas's Code Construction Act, "if any statute contains a provision for severability, that provision prevails in interpreting that statute." Tex.

Gov't Code § 311.032(a). SB 17 contains a severability clause stating that every "section, subsection, sentence, clause, phrase, or word" is severable. ROA.173.

In addition to the merits, the Court need not address several of Wang's other arguments. Namely, it does not matter whether Wang is "arguably" covered by SB 17 for standing purposes, Appellant.Br.22, or whether the Court should certify the meaning of the term domicile to the Texas Supreme Court, Appellant.Br.22-24, because neither will affect this case's outcome. The ultimate meaning of the term domicile is immaterial because Wang has not pleaded a credible threat of enforcement for injury purposes, has not established traceability, cannot overcome sovereign immunity, and has yet to articulate any interpretation of "domicile" as defined in SB 17 in which he would be domiciled in China.

Finally, Wang again asks the Court for "an injunction pending appeal." But the Court already denied that relief. Order, ECF No. 44. To the extent that Wang asks the Court to order the district court to enter a preliminary injunction, that inquiry is intertwined with the merits, which are for the district court to reach in the first instance.

## Conclusion

The Court should affirm the judgment of the district court.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

WILLIAM R. PETERSON
Solicitor General

/s/ Benjamin Wallace Mendelson
BENJAMIN WALLACE MENDELSON
Assistant Solicitor General
Ben.Mendelson@oag.texas.gov

Counsel for Appellee

## CERTIFICATE OF SERVICE

On October 10, 2025, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ Benjamin W. Mendelson
BENJAMIN W. MENDELSON

## CERTIFICATE OF COMPLIANCE

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 10,564 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ Benjamin W. Mendelson
BENJAMIN W. MENDELSON