No. 25-20354

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

Peng Wang,

*Plaintiff - Appellant*

v.

Ken Paxton, in his Official Capacity as Attorney General of Texas,

*Defendant - Appellee*

**On Appeal from**
United States District Court for the Southern District of Texas

4:25-CV-3103

**REPLY BRIEF OF APPELLANT PENG WANG**

SUBMITTED BY:

Justin Sadowsky
CHINESE AMERICAN LEGAL
DEFENSE ALLIANCE
4250 N. Fairfax Drive
Arlington, VA 22203

Keliang (Clay) Zhu
CHINESE AMERICAN LEGAL
DEFENSE ALLIANCE
7901 Stoneridge Drive #208
Pleasanton, CA 94588

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................1

ARGUMENT ........................................................................................3

   I.   Wang did not need to expressly allege or absolutely foreclose that he was covered under Subsection 5.253(4)(B). ....................................3

   II.   Wang is domiciled in China. ......................................................5

     A.   Wang is ineligible for in-state tuition precisely because he is not domiciled in the United States. ....................................................6

     B.   Even if there were a split of authority, Wang's renting of property would be arguably proscribed by the law. ........................10

     C.   At minimum, this Court should certify to the Texas Supreme Court. ...............................................................................................12

   III.   Wang faces a credible threat of enforcement. ...........................13

   A.  "Case or controversy" has the same meaning regardless of the cause of action. ..................................................................................13

   B.  Wang faces a threat of enforcement should he violate a newly enacted law..........................................................................................15

   C.  Cases about organizational standing or where the ability to enforce is itself speculative are not relevant here......................................20

   D.  Adopting the Attorney General's argument would create a circuit split. 21

   IV.  The Attorney General's arguments regarding traceability and Ex Parte Young fail for the same reasons...........................................22

CONCLUSION ..................................................................................25

CERTIFICATE OF COMPLIANCE......................................................27

# TABLE OF AUTHORITIES

## Cases

*A&R Engineering v. Scott*, 72 F.4th 685 (5th Cir. 2023) ........................ 21

*Arthur H. Richland Co. v. Harper*, 302 F.2d 324  (5th Cir. 1962) ........... 4

*Brown v. Kemp,* 86 F.4th 745,(7th Cir. 2023) ........................................ 16

*Bryant v. Woodall*, 1 F.4th 280 (4th Cir. 2021) ............................... 17, 22

*Center for Biological Diversity v. EPA*, 937 F.3d 533(5th Cir. 2019) ....... 4

*Chamber of Commerce v. FEC*, 69 F.3d 600 (D.C. Cir. 1995) ................. 22

*Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022) ............... 17

*Doe v. Bolton*, 410 U.S. 179 (1973) ............................................... 17, 22

*FBI v. Fikre,* 601 U.S. 234, (2024) ........................................................ 16

*Franyutti v. Franyutti*, No. 04-02-00786-CV, 2003 WL 22656879, (Tex.
    App. Nov. 12, 2003) ................................................................... 11

*G & G Fire Sprinklers, Inc. v. Bradshaw*, 156 F.3d 893 (9th Cir. 1998) 14

*Harrell v. The Fla. Bar*, 608 F.3d 1241 (11th Cir. 2010) ....................... 17

*Healthy Vision Ass'n v. Abbott*, 138 F.4th 385 (5th Cir. 2025) ......... 24, 27

*Hedges v. Obama*, 724 F.3d 170, (2d Cir. 2013) ................................... 17

*Knife Rts., Inc. v. Vance*, 802 F.3d 377 (2d Cir. 2015) ........................... 21

*La Union Del Pueblo Entero v. Abbott*, 151 F.4th 273 (5th Cir. 2025)... 20

*Matsumoto v. Labrador,* 122 F.4th 787 (9th Cir. 2024) ......................... 19

*Mi Familia Vota v. Ogg*, 105 F.4th 313 (5th Cir. 2024) ................... 19, 27

*Mobil Oil v. Att'y Gen. of Va.*, 940 F.2d 73 (4th Cir. 1991) .................... 22

*Morrison v. Baton Rouge*, 761 F.2d 242 (5th Cir. 1985) ......................... 5

*National Press Photographers Association v. McCraw*, 90 F.4th (5th Cir.
    2024) ............................................................................... 13, 20

*New Hampshire Right to Life PAC v. Gardner,* 99 F.3d 8 (1st Cir. 1996)
    ................................................................................................ 22

*Nieto v. Nieto*, No. 04-11-00807-CV, 2013 WL 1850780 (Tex. App. May 1,
    2013) ...................................................................................... 11

*Okpalobi v. Foster*, 244 F.3d 405 (5th Cir. 2001) ................................. 23

*Palau v. Sanchez*, No. 03-08-00136-CV, 2010 WL 4595705 (Tex. App. Nov.
    10, 2010) ................................................................................ 11

*Passel v. Fort Worth Indep. Sch. Dist.*, 440 S.W.2d 61 (Tex. 1969) ........ 12
*Peacock v. Bradshaw*, 194 S.W.2d 551 (Tex. 1946) ................................. 9
*Seattle Sch. Dist. No. 1 v. State of Wash.*, 633 F.2d 1338,(9th Cir. 1980) ................................................................................................................ 22
*Snyder v. Pitts*, 150 Tex. 407 (1951) ......................................................... 9
*Steinberg v. Carhart*, 530 U.S. 914, 917 (2000) ................................. 16, 19
*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) ...................... 14
*In re Swart*, 581 S.W.3d 844 (Tex. App. 2019) ................................ 10, 19
*Texas All. for Retired Americans v. Scott*, 28 F.4th 669 (5th Cir. 2022) 23
*Texas Democratic Party v. Abbott*, 978 F.3d 168 (5th Cir. 2020) ........... 24
*Texas State LULAC v. Elfant*, 52 F.4th (5th Cir. 2022) ................... 15, 23
*Texas v. Yellen*, 105 F.4th 755, 5th Cir. 2024) ...................................... 15
*Toll v. Moreno*, 458 U.S. 1 (1982) ............................................................. 7
*Valle del Sol Inc. v. Whiting*, 732 F.3d 1006 (9th Cir. 2013) ................. 22
*Villas at Parkside Partners v. City of Farmers Branch, Tex.*, 726 F.3d 524 (5th Cir. 2013) ...................................................................................... 10

## Statutes

16 C.F.R. § 1.61(b)(1)(iv) ........................................................................ 14
19 Tex. Admin. Code § 21.22(9) .............................................................. 10
19 Tex. Admin. Code § 21.24 ..................................................................... 9
22 C.F.R. § 1.61(b)(1)(iv) .................................................................. 14, 19
Tex. Educ. Code § 54.052(a)(1) ................................................................. 9
Tex. Fam. Code § 6.301 ........................................................................... 14
Tex. Prop. Code § 5.253(4) ................................................................. 13, 22
Tex. Prop. Code § 5.253(4)(A) .................................................................. 6
Tex. Prop. Code § 5.253(4)(B) .................................................................. 6
Tex. Prop. Code § 5.253(4)(C) ................................................................ 13
Tex. Prop. Code § 5.255(a) ...................................................................... 27
Tex. Prop. Code § 5.258(b) ...................................................................... 22
Tex. Prop. Code §§ 5.253(4)(D) .............................................................. 13
Tex. Prop. Code §§ 5.253(4)(E) .............................................................. 13
*Texas State LULAC,* 52 F.4th 257 .......................................................... 23

## Other Authorities

Tex. Atty Gen. Op. JM-241, 1984 WL 182307 (1984)......................10, 11

Tex. Att'y Gen. Op. JM-309 (1985) ..........................................................12

Tex. Atty. Gen. Op. JM-309, 1985 WL 189741 (1985)...........................10

# INTRODUCTION

The Attorney General does not like pre-enforcement challenges. That's fair. Nobody likes being sued, even in their official capacity. But the Attorney General proposes a test that, at least outside of the narrow confines of void-for-vagueness challenges under the First Amendment, would make pre-enforcement challenges to criminal statues like SB 17 all but impossible. Unless the Attorney General or other government enforcer went out of their way to target a specific person who has yet to violate a criminal statute, and expressly warned that person not to violate the statute, no pre-enforcement challenge would be possible. Indeed, the Attorney General makes his feelings plain in a footnote (at 27 n.4), that courts can never "assume a credible threat of enforcement" and so only an actual threat of enforcement can give rise to Article III jurisdiction.

This is not the law. The Attorney General concedes it is not the law in First Amendment void-for-vagueness cases. And there appears to be no logical reason (nor any command from the Supreme Court) that the meaning of Article III's phrase "case or controversy" should depend on

the application of the underlying substantive law based on a later-enacted Constitutional Amendment. It is also not the law in other circuits. And while this Court has sometimes asserted the test under First Amendment void-for-vagueness cases is different, it has never held so in a manner that would preclude standing here. Wang is at least arguably proscribed from renting a home under SB 17. If he violates SB 17, he is subject not only to regulatory enforcement from the Texas Attorney General but also criminal prosecution from hundreds of different Texas county prosecutors. When faced with a statute that has only recently passed and, at the time this suit was brought, had yet to even take effect, that is a credible threat of enforcement.

So, then, standing in this case turns on whether or not Wang is arguably proscribed by SB 17 from renting a home for a year or longer. And that, notwithstanding a game of gotcha about pleading exactly which non-United States country Wang is a domicile of (when he would be covered by SB 17 regardless of the answer), turns on the meaning of the term domicile under Texas law. The Attorney General does not deny that Wang cannot treat his living in the United States with an F-1 visa a domicile for the purpose of in-state tuition. Nor does he deny that a condition

of Wang's visa is to agree to return to China when he is done with his studies. He instead points to a split of authority about whether Wang could be domiciled in Texas for purposes of divorce venue. He also misconstrues the purpose of a different subsection of SB 17 related to people who are here unlawfully. But, unless this Court certifies the question of the meaning of domicile under SB 17 to one of Texas's two highest courts, these attempts at nitpicking do not change the conclusion that Wang is at least arguably unable to claim a domicile in the United States under SB 17.

## ARGUMENT

### I.    Wang did not need to expressly allege or absolutely foreclose that he was covered under Subsection 5.253(4)(B).

In a game of gotcha, the Attorney General argues (at 11-16) that Wang failed to adequately allege facts disproving that he was domiciled in some third country instead of China. The Attorney General's theory is not that Wang would not be covered by SB 17 if he had been domiciled in, say, Belgium, but just that he did not allege specifically in his Complaint that he was covered by SB 17 under Tex. Prop. Code § 5.253(4)(B) (Citizens of China domiciled in countries other than China or the United States) as opposed to Tex. Prop. Code § 5.253(4)(A).

3

But Federal Rule of Civil Procedure 8—requiring "a short and plain statement of the grounds for the court's jurisdiction" and "a short and plain statement of the claim showing that the pleader is entitled to relief"—does not require such pedantry. Instead, "all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Arthur H. Richland Co. v. Harper*, 302 F.2d 324, 325 (5th Cir. 1962). And here, the Attorney General and this Court are both on notice that Wang is alleging he is covered by SB 17, and that such allegation is true if he is not domiciled in the United States under SB 17, regardless of where else he might be domiciled.

The Attorney General relies on *Center for Biological Diversity v. EPA*, 937 F.3d 533, 542 (5th Cir. 2019), to argue otherwise, but that case does not support the Attorney General's theory of litigation by children's game. That case instead states that Courts should be "reluctant to treat Petitioners' standing arguments as forfeited." *Id.* at 542 n.4. Only when "[c]ompletely omitting a theory of injury" can such a failure to raise be fatal. But here, Wang has clearly raised his theory of injury—he cannot rent property because he is targeted by SB 17. Whether he is covered

4

under the law because he is domiciled in China versus domiciled in some hypothetical third country is trivia.

The Attorney General further claims (at 15) that Wang has forfeited any response to this argument because he did not raise it below. But the Attorney General also did not raise this below. Had he (and had this argument had any merit), then the solution would (and is) simple—requiring not dismissal but a small amendment to the Complaint. *Compare with Morrison v. Baton Rouge*, 761 F.2d 242, 248 (5th Cir. 1985) (dismissal without leave to amend appropriate only because plaintiff had already pled his "best case"). But since he did not, Wang had nothing to respond to or to forfeit. If the Attorney General's forfeiture argument were correct, then no appellant could ever win an appeal so long as an appellee could come up with some alternative ground for affirmance (however implausible), and then declare that the appellant has forfeited any response to that argument.

## II.    Wang is domiciled in China.

Contrary to the Attorney General's claims, Wang is domiciled in China. (As explained in Section I, above, it would not matter if he were

domiciled in a third country, but of course Wang does not allege he lived anywhere but China and the United States.)

### A.     Wang is ineligible for in-state tuition precisely because he is not domiciled in the United States.

Wang is a student in Texas; the record does not state where. But even were Wang at a public school, he would not be eligible for in-state tuition. That would still be true even if Wang somehow moved to Texas as a baby on an F-1 visa. It would still be true even if he made a personal oath to never leave Texas, not even if his F-1 visa expired. *See* Opening Br. at 18.[1] And, importantly here, it is true even though Texas law merely requires a person to "establish" and "maintain domicile" in Texas for 12 months prior to enrolling. 19 Tex. Admin. Code § 21.24(a)(1)(B); Tex. Educ. Code § 54.052(a)(1). This is because, under Texas law, only "nonimmigrant[s] who hold[] one of the types of visas identified as eligible to domicile" may consider themselves domiciled here in Texas. *Id.* at § 21.24(d)(3).  Separately, an "eligible nonimmigrant" is defined as someone "who has been issued a type of nonimmigrant visa by the USCIS that permits the person to establish and maintain domicile in the United

---

[1] *See also, e.g.,* https://onestop.utexas.edu/managing-costs/cost-tuition-rates/texas-residency/ ("Visa holder (cannot be F-1, J-1 or TN");

States." 19 Tex. Admin. Code § 21.22(9). An F-1 visa is just not one of those visas. So Wang's time living here on an F-1 visa does not count for purposes of domicile.

The Attorney General, in two opinions written back in the 1980s, explained why Texas law works in the way it does. Tex. Atty Gen. Op. JM-241, 1984 WL 182307 (1984); *see also* Tex. Atty. Gen. Op. JM-309, 1985 WL 189741 (1985), and critically, that the only reason the law permits nonresident visaholders at all to be considered domiciled in Texas is that the Constitution requires it. *See* Opening Br. at 17-18. The Attorney General quibbles that the statute those opinions were analyzing has now been repealed. But that misses the point. Those opinions were cited because they provide cogent explainers as to why, under Texas law regarding qualifications and benefits, F-1 visaholders cannot deem themselves to be domiciled here given how Texas interprets the term domicile. And that logic remains true for SB 17.

The Attorney General quibbles (at 19) that the statute interpreted in the 1984 and 1985 opinion is "now-repealed." That's true (but only, apparently, as it relates to this case, to update the law to comply with the minimum requirements of *Toll v. Moreno*, 458 U.S. 1 (1982), as explained

in the two Opinions). But it's also besides the point. The point was that the Attorney General's opinions explain why Texas law treats F-1 visaholders as not domiciled in Texas, at least for purposes of obtaining rights and benefits.

The Attorney General's complaint (at 30 n.5) that Wang is willing to defer to the 1980's Texas Attorney General who wrote the opinions but not the Attorney General here and now that is making self-serving statements that Wang is not covered by the law misses the point again, for the same reason. Wang is not asking this Court to defer to either the 1980's opinion or the Attorney General today. *See also* Opening Br. at 20 (explaining why such deference is inappropriate). Rather, Wang is asking this Court to accept that Texas law interprets the phrase domicile in a particular way, to exclude J-1 visaholders. And, again, the 1980's Opinions (which, via the Texas Administrative Code, are still effectively followed today) explain why that is the case.

The Texas Attorney General argues (at 18-19) these Opinions were not interpreting the phrase domicile. Respectfully, the Opinions speak for themselves. *See* Tex. Att'y Gen. Op. JM-241 ("Congress expressly conditioned admission of aliens in some nonimmigrant categories on an

intent not to abandon a foreign residence, a fact which precludes the establishment of a domicile in the United States for those aliens while allowing the establishment of a domicile for certain other nonimmigrant categories"); Tex. Att'y Gen. Op. JM-309 (1985) ("Although the word domicile is not defined in the Immigration and Nationality Act .... courts have concluded that a person cannot be lawfully domiciled in this country while holding a student visa"). And, ultimately it does not matter. Texas law—today—uses the term domicile to define eligibility in both its statute and its regulations, and Texas law—today—interprets that term to preclude F-1 visaholders.

Finally, the Attorney General (at 12-13) asks this Court to ignore all prior interpretations of the phrase domicile, even though the term is defined the same as it was back in *Snyder v. Pitts*, 150 Tex. 407, 413 (1951)), and even ignore binding decisions of the Texas Supreme Court that have never been overturned and are not suggested to be bad law, *see Peacock v. Bradshaw*, 194 S.W.2d 551, 555 (Tex. 1946) ("domicile which has once attached is retained until a new domicile is attained"). The Court can do this, the Texas Attorney General later explains at (21), because the law expressly includes those "unlawfully present" but not those

on an F-1 visa. Tex. Prop. Code § 5.253(4)(C). But this ignores two problems. ***First***, those "unlawfully present" is not, as the Attorney General put it, a "type of immigrant status." *See Villas at Parkside Partners v. City of Farmers Branch, Tex.*, 726 F.3d 524, 533 (5th Cir. 2013). ***Second***, "unlawfully present" individuals are given its own category because they are singled out for worse treatment under SB 17 than others covered by the law. SB 17 permits those covered by subsection (4)(A) (domiciled in China) but not subsection (4)(C) (unlawfully present) the ability to purchase a homestead. Tex. Prop. Code § 5.253(4). Similarly, permanent residents are excluded from the act because otherwise even U.S. citizens and permanent residents could otherwise be covered by the law by operation—regardless of domicile status—by operation of Tex. Prop. Code §§ 5.253(4)(D) and (E), which apply to agents of a foreign state and members of a foreign ruling political party.

### B.  Even if there were a split of authority, Wang's renting of property would be arguably proscribed by the law.

Wang also cited (at 17) to a Texas Court of Appeals case in the context of divorce proceedings. *See In re Swart*, 581 S.W.3d 844, 850 (Tex. App. 2019). The Attorney General finds a handful of contrary cases (at 23-24), to suggest a split of authority.

*Nieto v. Nieto*, No. 04-11-00807-CV, 2013 WL 1850780, at *6 (Tex. App. May 1, 2013), involved investment visas (E class visas), which under Texas law do permit a finding of domicile.[2] *Palau v. Sanchez*, No. 03-08-00136-CV, 2010 WL 4595705, at *6 (Tex. App. Nov. 10, 2010), and *Franyutti v. Franyutti*, No. 04-02-00786-CV, 2003 WL 22656879, at *1 (Tex. App. Nov. 12, 2003), contrary to *Swart*, allowed people living here unlawfully on tourist visas to be considered domiciled in Texas for divorce venue purposes. See Tex. Fam. Code § 6.301. But since they were living here unlawfully, they were clearly not binding themselves to promises in their visas that they would depart upon expiration. *Compare with* Opening Brief at 16 and 22 C.F.R. § 1.61(b)(1)(iv) (F-1 visas must aver that they "intend, and will be able, to depart upon termination of student status").

Meanwhile, if the Court needed to decide whether it should follow the rule of domicile for tuition or the rule for venue in divorce cases, the more obvious comparison is the one that confers a right or benefit rather than the one that tells you which court is the one appropriate to sue in. And likewise, to the extent that either the split in authorities regarding

---

[2] See https://registrar.unt.edu/sites/default/files/eligible-visas.pdf.

the meaning of domicile in the venue context or there is tension between the meaning of domicile in one context versus another, and in light of the complete lack of any Texas law as to what it means specifically in the context of SB 17, Wang has shown that SB 17 arguably proscribes the renting of property that he wishes to engage in.

## C.    At minimum, this Court should certify to the Texas Supreme Court.

Of course, if the Court wants to avoid a finding based on Wang merely being "arguably" covered by the law, it has a way to do so. It can certify the question of the meaning of domicile under SB 17 to the Texas Supreme Court, or alternatively, to the Texas Court of Criminal Appeals. *See Passel v. Fort Worth Indep. Sch. Dist.*, 440 S.W.2d 61, 63 (Tex. 1969) ("the meaning and validity of a penal statute or ordinance should ordinarily be determined by courts exercising criminal jurisdiction"). A definitive ruling from Texas' highest court would not only resolve the parties' dispute over standing but also, if resolved in the Attorney General's favor, would give Wang and the thousands of Chinese people in Texas like him an actual reprieve from the threat of prosecution under SB 17.

## III.  Wang faces a credible threat of enforcement.

### A.  "Case or controversy" has the same meaning regardless of the cause of action.

The Attorney General insists (at 26) that Wang must show a "substantial" rather than a "credible" threat of prosecution, and then goes on to argue that Wang cannot do that in the absence of an actual threat made by the Attorney General since this is not a First Amendment case. But it would be odd if the meaning of the phrase "case or controversy" in Article III, which was signed in 1787, ratified in 1788, and went into effect in 1789, depended on the application of an Amendment that was proposed in 1789, and ratified and adopted in 1791.

Solving this jurisdictional riddle is fortunately simple—the Attorney General is again incorrect. The Attorney General's argument to the contrary is based on *National Press Photographers Association v. McCraw*, 90 F.4th 770 (5th Cir. 2024). The Attorney General notes that application of the case-and-controversy test under Article III turned out differently there for a Due Process argument and a First Amendment void-for-vagueness argument. *Id.* at 782-783.

But *National Press* relies on the same case for its Article III analysis under the First Amendment and the Due Process Clause—*Susan B.*

*Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014). 90 F.4th at 781-83. This, as *National Press* noted, is the same case that *Speech First* relies on. *Id.* at 782. *Susan B. Anthony List* also applies the "credible threat of prosecution" test. 573 U.S. at 159. The difference in result was not due to using a different test for the two claims, but because void-for-vagueness injury is different than Due Process injury. *See G & G Fire Sprinklers, Inc. v. Bradshaw*, 156 F.3d 893, 899 n.2 (9th Cir. 1998) ("whether a party has standing is a separate question from whether a party has an interest protected by the Due Process Clause"), *vacated on other grounds*, 526 U.S. 1061 (1999), *and opinion reinstated*, 204 F.3d 941 (9th Cir. 2000). A person with a void-for-vagueness claim is worried not about violating a law but about the risk of being charged under a vague statute even without violating that statute. And his injury is not the consequences of violation but the chill of his speech.

But even if *National Press* purported to enact a new meaning of Article III, *Speech First* did not, by its own terms, limit its holding to First Amendment void-for-vagueness cases, 979 F.3d 319, 329-335 (5th Cir. 2020). *Speech First* came first, and one panel of this Court cannot overturn an earlier one. *Speech First* also came before *Texas State LULAC v.*

14

*Elfant*, 52 F.4th 248 (5th Cir. 2022), which suggested a different standard
not between First Amendment claims and other claims, but between
claims where the plaintiffs had a risk of enforcement and claims based
on the risk of enforcement against third parties. *Id.* at 257. As to plain-
tiffs, the risk of enforcement was insufficient because there was "compel-
ling contrary evidence" requiring a "number of stars that would have to
align before Plaintiffs could be prosecuted," *id.* at 257 n.6.

## B.    Wang faces a threat of enforcement should he violate a newly enacted law.

Maybe all the Attorney General is claiming, on the same test, is
that outside the First Amendment, this Court cannot "***assume***" the "cred-
ible threat of enforcement," Br. at 26 (citing *Texas v. Yellen*, 105 F.4th
755, 765 (5th Cir. 2024) (emphasis Attorney General's) (citing in turn
*Speech First*, 979 F.3d at 330)). The Attorney General does not explain
why that should be. And it's not clear what, if anything, the Attorney
General is proposing short of an actual threat of enforcement.

The threat of enforcement to Wang is credible. After all, regardless
of Wang's subjective internal feelings about living in Texas in the future,
Wang has signed documents, attesting under the penalty of perjury, that
once the student status provided by his F-1 visa expires, he will return to

China. *See* Opening Brief at 16 and 22 C.F.R. § 1.61(b)(1)(iv) (F-1 visas must aver that they "intend, and will be able, to depart upon termination of student status"). Someone trying to determine whether Wang violated SB 17 will have knowledge of that promise, rather than what is subjectively in his heart. *See also Swart*, 581 S.W.3d at 849 ("domicile includes a subjective as well as an objective component, although the subjective component may be established by objective factors"). And while the Attorney General has (after this litigation was brought) suggested it would not enforce the law against Wang, *but see FBI v. Fikre,* 601 U.S. 234, 241 (2024) (noting that a defendant has the incentive to disavow enforcement in order to terminate litigation, but that will ordinarily not prohibit them from changing paths after "win[ning] dismissal"), there are 254 prosecuting offices that also have authority to bring a case under SB 17, none of whom have made a similar disavowal. *Compare with Steinberg v. Carhart*, 530 U.S. 914, 917 (2000) (ignoring the disavowal of the Attorney General in a non-First Amendment challenge to a criminal law because "[s]ome present prosecutors (and future Attorneys General) might use the law at issue to pursue" plaintiffs); *see also Brown v. Kemp,* 86 F.4th 745, 770 (7th Cir. 2023) ("even if all those authorities agreed that none of

16

the conduct in the videos violated the hunter harassment law, their agreement did not extend to the many absent officials who could choose to enforce the statute against plaintiffs").

If this is presumption, then such presumption is permitted on these facts. The Supreme Court "appears willing to presume that the government will enforce the law as long as the relevant statute is 'recent and not moribund'." *Hedges v. Obama*, 724 F.3d 170, 197 (2d Cir. 2013) (citing *Doe v. Bolton*, 410 U.S. 179, 188 (1973) (another non-First Amendment case), *abrogated on other grounds by Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022)); *see also, e.g., Harrell v. The Fla. Bar*, 608 F.3d 1241, 1257 (11th Cir. 2010) (similar); *Bryant v. Woodall*, 1 F.4th 280, 286 (4th Cir. 2021), *as amended* (June 23, 2021) (similar). After all, how else would enforcement be shown for a law that has yet to take effect?

This distinction regarding new laws was specifically a factor in finding no threat in *National Press*, which was not a new law. 90 F.4th at 786 ("in the decade or so that Chapter 423 has been on the books, the record evidence shows that Director McCraw, Chief Mathis, and their respective agencies have never enforced it."). *National Press* noted the standard was low, as "even a scintilla of enforcement" would do. *Id.* And here, SB 17

17

specifically orders the Attorney General to create procedures for and enforce the law. The record shows the Attorney General plans on creating those procedures. ROA.330, ROA.332.

From the Attorney General's perspective, this is not enough. No new law can be challenged, as parties have to wait until someone is brave enough to violate the law and be charged. But the Attorney General cites no case supporting such a novel proposition. And, to be clear, while the Attorney General has claimed it will not enforce SB 17 against Wang, it has not disclaimed enforcement of SB 17 in general. *See* § IV, below.

Otherwise, when could an individual, in the absence of a specific threat against him, bring a pre-enforcement challenge? The Attorney General does not say, other than suggest, in a footnote (27 n.4), that the answer may be never. But the consequences for that, not only to federal prerogatives under the Supremacy Clause, but other constitutional provisions and indeed other parts of the First Amendment (such as the Free Exercise clause or Free Speech cases not based on vagueness) would be grave.

The Attorney General (at 30) further says we can ignore the risk of criminal prosecution because no prosecutors are defendants in this case.

But that has never stopped standing before, *see Steinberg*, 530 U.S. at 917; *see also Matsumoto v. Labrador,* 122 F.4th 787, 801 (9th Cir. 2024) (rejecting same argument), and it should not here, either. The Attorney General conflates the threat-of-enforcement test (which is about whether the plaintiff has suffered a sufficient impending injury to give rise to standing) with the question of whether the Attorney General is the proper defendant. *See* § IV, below.

Likewise, contrary to the Attorney General's argument (at 31), the fact that prosecutors can bring (criminal) claims as well as the Attorney General (who can bring civil claims) does not affect standing. Plaintiffs are not challenging whether or not criminal penalties can attach to SB 17 violations, i.e., Tex. Prop. Code § 5.258(b), but whether SB 17 can make these actions violations of any nature, civil or criminal, in the first instance, i.e., Tex. Prop. Code § 5.253(4). The factual and procedural background *of Mi Familia Vota v. Ogg*, 105 F.4th 313, 318 (5th Cir. 2024), cited by the Attorney General, has nothing to say on this matter. Nor does any other part of *Mi Familia Vota.*

19

### C.    Cases about organizational standing or where the ability to enforce is itself speculative are not relevant here.

*La Union Del Pueblo Entero v. Abbott*, 151 F.4th 273, 286 (5th Cir. 2025), a case about organizational standing, is far afield from this one. There, the plaintiff suggested that laws that regulated people who gave voter assistance would make it harder to recruit voter assistants not because the organizations planned to violate the law, but merely because such additional requirements would make potential voter assistants worried they might violate the law and thus choose not to be a voter assistant. "All [plaintiffs] offer is the fanciful notion that an assistor might run afoul of the provisions and be prosecuted. But that speculation, which "depends on a 'highly attenuated chain of possibilities, fails to establish actual or imminent injury." *Id.* at 286 (cleaned up). "Plaintiffs cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Id.* (cleaned up); *see also Texas State LULAC,* 52 F.4th 257 (making similar distinction between threat of enforcement to organizational plaintiff and third parties).

That is very different than here. Wang himself wants to rent property, which is directly prohibited by SB 17, assuming Wang is not

domiciled in the United States. He is not worried that SB 17 is chilling legal acts or that others may be prosecuted. He is worried that he will be punished for renting a home. That fear is reasonable.

Same with *A&R Engineering v. Scott*, 72 F.4th 685 (5th Cir. 2023). That statute involved only indirect enforcement (if at all) by the Attorney General. *Id.* at 690 ("A&R has not shown that the Attorney General **could** interfere with the City's contracts") (emphasis original). It also involved a six-year-old statute (*id.* at 688) that the Attorney General never even purported to have the ability to enforce (*id.* at 690). *See also* § B, above (explaining how the threat of enforcement test treats newly enacted statutes differently from ones with a history of enforcement or nonenforcement). Even then, *A&R* limited its analysis to when Attorney General enforcement could only result, if at all, "as a highly attenuated, speculative chain of possibilities." *Id.* at 690 (cleaned up).

## D.   Adopting the Attorney General's argument would create a circuit split.

Holding that its ordinary test of presuming enforcement of new laws is limited to the First Amendment context, it will create a circuit split. *See Knife Rts., Inc. v. Vance*, 802 F.3d 377, 384 n.2 (2d Cir. 2015) ("The [Supreme] Court has drawn no distinction between these

constitutional interests in pronouncing a credible threat of prosecution sufficient to establish standing"); *Bryant*, 1 F.4th at 286 (4th Cir.); *Mobil Oil v. Att'y Gen. of Va.*, 940 F.2d 73, 76 (4th Cir. 1991); *Seattle Sch. Dist. No. 1 v. State of Wash.*, 633 F.2d 1338, 1342 n.1 (9th Cir. 1980), *aff'd on other grounds*, 458 U.S. 457 (1982); *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1015 (9th Cir. 2013); *see generally Doe*, 410 U.S. at 188-89. So would requiring a more stringent finding. *See New Hampshire Right to Life PAC v. Gardner,* 99 F.3d 8, 15 (1st Cir. 1996) (presuming enforcement and noting low standard required by *Susan B. Anthony List*); *Chamber of Commerce v. FEC,* 69 F.3d 600, 603 (D.C. Cir. 1995) (finding standing despite a deadlock vote on whether to issue an advisory opinion because "[n]othing … prevents the Commission from enforcing its rule at any time with, perhaps another change of mind").

## IV. The Attorney General's arguments regarding traceability and Ex Parte Young fail for the same reasons.

The Attorney General makes new arguments about traceability (at 31-32) and sovereign immunity (at 32-35), but these arguments are both explicitly based on a lack of a credible threat of prosecution, and thus fail for the same reasons as explained in Section III.

The only possible distinction the Attorney General might raise between the case-or-controversy test and sovereign immunity is that part of the risk of enforcement comes from prosecutors rather than the Attorney General himself. But the two part test of *Okpalobi v. Foster*, 244 F.3d 405, 416–17 (5th Cir. 2001), asks whether the government defendant has the ability and "willingness" to "enforce the statute" in general, not whether it has shown a willingness to enforce the statutory provision in question against a particular defendant. *See Texas All. for Retired Americans v. Scott*, 28 F.4th 669, 672 (5th Cir. 2022) (describing the test as "provision by provision"). And, as noted above, the Attorney General has not disclaimed enforcing SB 17's prohibitions in general, but only against Wang. Indeed, the Attorney General has described himself (incorrectly) as the "sole enforcer of this statute." ROA.331. The Attorney General has further stated in this litigation that it would be adopting procedures guiding this enforcement, again establishing a willingness to enforce. ROA.330, ROA.332.

Finally, the Attorney General claims sovereign immunity under *Ex Parte Young* because Wang cannot show an act of compulsion or constraint. But as this Court recently explained, "[t]he threat of onerous

penalties is" the "ongoing 'compulsion or constraint.'" *Healthy Vision Ass'n v. Abbott*, 138 F.4th 385, 397 (5th Cir. 2025)

*Mi Familia Vota* is not to the contrary. That case says that "fear of prosecution" is "insufficient to demonstrate compulsion or constraint" when a purported defendant has not shown a willingness to enforce the statute. 105 F.4th at 332 ("Ogg has neither enforced the challenged statute against anyone nor threatened to do so"). As *Healthy Vision* clarified, the test remains "some scintilla" of willingness that the defendant will enforce the statute, 138 F.4th at 398. "[W]e have not imposed upon plaintiffs the insuperable obstacle of proving the future as if it has already been observed; we have merely asked them for an evidence-based forecast." *Id.* (citing *Mi Familia Vota*, 105 F.4th at 329). And *Healthy Vision* goes on to explain that the "specific and relevant duty" to create the procedures for enforcement is enough to meet this scintilla test. *Id.* (citing *Texas Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020)). We have that here from the Attorney General's statements at the hearing that it has the sole authority to enforce the statute and it is developing procedures for doing so, ROA.330, ROA.332; *see also* Tex. Prop. Code § 5.255(a) (giving Attorney General the duty to develop such procedures).

24

## CONCLUSION

The Court should reverse the decision of the District Court and instruct the District Court to provisionally certify a class and issue an injunction prohibiting the Attorney General from enforcing SB 17 against the class. In the alternative, the Court should grant the Appellants' pending Motion to Certify to the Texas Supreme Court (or to the Texas Court of Criminal Appeals) and defer a ruling until that court makes its determination.

October 20, 2025

Respectfully submitted,

/s/ Justin Sadowsky
Justin Sadowsky
CHINESE AMERICAN
LEGAL DEFENSE
ALLIANCE
4250 N. Fairfax Drive #600
Arlington, VA 22203
646-785-9154
justins@caldausa.org

Keliang (Clay) Zhu
CHINESE AMERICAN
LEGAL DEFENSE
ALLIANCE
7901 Stoneridge Drive #208
Pleasanton, CA 94588
925-399-6702
czhu@dehengsv.com

*Attorneys for Plaintiff-Appellant*

# CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1: this document contains 5,229 words.

2. This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because:

this document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in Century Schoolbook 14-point font.

/s/Justin Sadowsky

27